194 So.2d 131 (1966)
Leon D. WILLIAMS, Jr., et al., Plaintiffs-Appellees,
v.
BOLOGNA BROTHERS, INC., et al., Defendants-Appellants.
No. 6843.
Court of Appeal of Louisiana, First Circuit.
December 28, 1966.
Rehearing Denied February 6, 1967.
*132 Gerald L. Walter, Jr., of Kantrow, Spaht, Weaver & Walter, Baton Rouge, for appellants.
David W. Robinson, of Watson, Blanche, Wilson, Posner & Thibaut, Baton Rouge, for appellees.
Before LANDRY, ELLIS and BAILES, JJ.
BAILES, Justice.
This is a tort action. Plaintiffs are Leon D. Williams, Jr., appearing herein individually to recover certain special damages on behalf of the community of acquets and gains between himself and his wife, and in his representative capacity as administrator of the estate of his minor son, Leon D. Williams, III, to recover general damages for certain physical injuries suffered by him, and Mrs. Mary A. Williams to recover general damages for certain physical injuries she suffered. The defendants are Bologna Brothers, Inc., and its automobile liability insurer, Hartford Accident and Indemnity Company. The damages, recovery of which is herein sought by plaintiffs, were incurred in a collision between a passenger car owned by the community and driven by Mrs. Mary. A. Williams and a large truck owned by Bologna Brothers, Inc., and driven by its employee, Lonnie Dixon.
The accident occurred on February 21, 1964, at about 3:20 p. m., on Florida Boulevard at the intersection of Donmoor Street. Both vehicles were traveling west in the left or inside lane. After trial in the district court, judgment was rendered in favor of plaintiffs, as follows: Leon D. Williams, Jr., individually was awarded $2,431.85, and as administrator of the estate of his minor son, Leon D. Williams, III, the sum of $2,000, and Mrs. Mary A. Williams was awarded the sum of $15,000, and in solido against both defendants. Defendants appeal. Plaintiff, Leon D. Williams, Jr., answered the appeal and prayed for an increase in the amount of the award to the son to $4,000.
The facts surrounding the occurrence of the accident are that plaintiff, Mrs. Mary D. Williams, was proceeding west on Florida Boulevard which at the time of the accident was a four lane street running generally east and west in the City of Baton Rouge. Two lanes were for traffic moving eastward and two lanes for traffic moving westward, separated by a neutral ground. At certain intervals cross-over cutouts or passageways were provided for traffic traveling in either direction to make left turns or changes in direction of travel requiring execution of left turns. Such a cross-over facility was provided at the intersection of Donmoor Street and Florida Street.
On the occasion of this accident, plaintiff, Mrs. Williams, was driving her young son, Leon D. Williams, III, from her residence in or near the Broadmoor section on the east side of the Florida Boulevard traffic exchange to a public school located south of Florida Boulevard. As Mrs. Williams was traveling west it was necessary for her, in order to reach her destination, to make a left turn at the intersection of Donmoor Street
As she drove west she was aware of the large truck of Bologna Brothers, Inc., to her rear in the vicinity of the traffic exchange at Airline Highway, however, she was not aware of its presence thereafter until it struck her some time subsequently. She was driving in the extreme left lane and after pulling away from a traffic control signal several blocks east of the situs of the accident, Mrs. Williams put in operation her left turn indicator as well as extending her hand and arm to give the appropriate left turn hand signal. It was found that she was traveling at a speed not in excess of 15 miles per hour prior to making the left turn, and she gradually reduced this speed until she made her left turn. Either immediately prior to stopping in making the left turn, or immediately *133 thereafter, to permit vehicles traveling east to clear the intersection, the truck aforesaid struck the plaintiff's vehicle in the rear.
The defendants, by brief in this court, admit the negligence of the driver, Lonnie Dixon; however, they seriously contend that Mrs. Mary A. Williams was guilty of contributory negligence, and of course, if she is guilty of negligence that was a proximate cause of the injuries she suffered, it would provide a bar to recover both on her part and the individual claim of Leon D. Williams, Jr., asserted as head and master of the community of acquets and gains, as she was acting as agent for the community. It would not affect the liability of defendants to the guest passenger, Leon D. Williams, III.
On the question of liability and in support of their contention of contributory negligence on the part of Mrs. Williams, defendants complain that the trial judge committed error in finding that she was not required to ascertain that her turning maneuver could be completed in safety and without unduly delaying traffic on Florida Boulevard. To support their position, defendants cite us to the cases of Plaisance v. Maryland Casualty Company (La.App. 1964), 169 So.2d 695, and Washington Fire & Marine Insurance Company v. Firemen's Insurance Company, (1957) 232 La. 379, 94 So.2d 295. As statutory support for their positions, defendants cited LSA-R.S. 32:104. This is the substance of their first two specifications of error.
We find LSA-R.S. 32:104 contains three directives to motorists that are apropos to the case at bar. This section contains three paragraphs numbered A, B and C. Paragraph A required that a vehicle shall not be turned at an intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101 and unless such movement can be made with reasonable safety; Paragraph B requires the motorist who intends to make a left turn to give a signal of such intention during not less than the last one hundred feet of travel before turning; and Paragraph C prohibits any stop or sudden decrease in speed without first giving an appropriate signal to the driver of any vehicle immediately to the rear.
LSA-R.S. 32:101, provides:
"The driver of a vehicle intending to turn at an intersection shall proceed as follows:
* * * * * *
"(3). Left turns on other than two-way roadways. At any intersection where traffic is restricted to one direction on one or more of the roadways, the driver of a vehicle intending to turn left at any such intersection shall approach the intersection in the extreme lefthand lane lawfully available to traffic moving in the direction of travel of such vehicle and after entering the intersection the left turn shall be made as to leave the intersection, in the safest lane lawfully available to traffic moving in such direction upon the roadway being entered.
"* * *."
Our examination of the facts surrounding this accident, as shown by the record, shows us conclusively that Mrs. Williams complied with the statutory requirements for making a left turn. She testified that she put in operation her left turn directional signal some distance before making her turn, and additionally she gave a hand signal indicating her intention to make a left turn. Admittedly, Mrs. Williams was positioned in the correct lane of traffic for a left turn. Although Mrs. Williams testified she did not see the truck to her rear, we find there was nothing she could have or should have done preparatory to making the left hand turn that she did not in fact do. She was driving in the left lane next to the neutral ground, she had signalled her intention to make a left turn more than 100 feet prior to reaching the intersection, she was traveling at a reasonable rate of speed and she had *134 gradually decreased the speed of her vehicle. We find that the sole proximate cause of this accident was the inattention of Lonnie Dixon, the driver of the truck. He testified he was driving about fifteen feet in rear of plaintiff at a speed of 35 to 40 mph and that he saw no signal of a left turn. Obviously, this testimony does not reflect the true state of facts. It was shown that the truck skidded more than thirty feet and was traveling, at the time it struck the rear of the plaintiff's vehicle, with such speed and force as to propel the plaintiff across the neutral ground and into the path of oncoming traffic on the other side of Florida Boulevard. It is clear that Lonnie Dixon was not keeping a proper lookout ahead and this coupled with his gross inattention to the duties of a driver and lack of control over his vehicle were the causes of this accident.
The two cases cited above relied on by the defendants are not apropos to the facts of the case at bar. The cited cases deal with the unlawful interruption of, or interference with, the movement of overtaking or following vehicles, and the yielding of right of way to such vehicles. This is not the classic left turn case and the law and rules of the road are different therefrom. The truck which struck the plaintiff's vehicle had no position on the road, and obviously no right, to pass to the left.
We find no error in the conclusion of the trial court that Mrs. Williams was free of negligence, and as stated supra, the sole proximate cause of the accident was the actionable negligence of Lonnie Dixon in the particulars discussed above.
The defendants further complain that the awards made by the trial judge to Mrs. Williams and to her son were excessive and amounted to an abuse of discretion on the part of the trial judge. They have cited the case of Ballard v. National Indemnity Company, 246 La. 963, 169 So.2d 64 in support of this contention.
It is well settled in our state that the trial judge has much discretion in the awarding of general damages for personal injuries, which discretion should not be disturbed upon appellate review in the absence of an abuse of discretion. See McCorquodale v. Watson (La.App.1965) 170 So.2d 545, Ballard v. National Indemnity Co. (1964) 246 La. 963, 169 So.2d 64, Wright v. State Farm Mutual Automobile Insurance Co. (La.App.1964) 169 So.2d 623, and Gaspard v. LeMaire (1963) 245 La. 239, 158 So.2d 149.
Leon D. Williams, III, the minor son of the plaintiffs, sustained a brain concussion, rendering him unconscious after the accident, and also sustained a three-inch laceration on the right forehead and a three-inch laceration on the right buttock, requiring about fourteen stitches each. These lacerations left scars which, however, are not noticeable, one being on his right buttock and the other at the hairline level of his forehead. Following the accident, Dr. Delbert Brown examined him thoroughly, sutured the lacerations, x-rayed his skull for possible fracture and admitted the boy to the hospital for observation. He testified that plaintiff's son was discharged from the hospital the following day but was under his care for approximately fifteen days following the accident. The doctor further testified that while the boy has had several headaches as a result of the blow to his head, he suffered no other residual complaints. The trial court awarded the plaintiff, Leon D. Williams, Jr., $2,000.00 for the personal injuries of this son. It is our opinion that this award is proper and is not an abuse of the court's discretion.
We feel that the trial court did abuse its discretion in awarding plaintiff, Mrs. Mary D. Williams, $15,000.00 for her physical injuries and for the anxieties which have caused physical symptoms. The jurisprudence of this state is well settled that the plaintiff in a civil suit must establish his claim by a fair preponderance of the evidence. It is not sufficient for the *135 plaintiff to make his claim out to be probable, it must be established to a legal certainty. In Martin v. Westchester Fire Insurance Company (La.App.1966) 183 So.2d 769, this court observed:
"There is, * * *, an incontrovertible rule well established in the jurisprudence of this State that the plaintiff in an action in tort, as in other cases, bears the burden of proof; he is required to establish his claims to a legal certainty by a reasonable preponderance of the evidence. Mere possibilities and even unsupported probabilities are insufficient to support a judgment. Roberts v. M. S. Carroll Co., Inc., La.App., 68 So.2d 689."
In light of this jurisprudence, we find that the plaintiff, Mrs. Mary Williams, has not proved a causal relationship between a part of her sufferings and this accident. Mrs. Williams suffered what is commonly referred to as a whiplash injury to her neck and back, as well as an injury to her chest, and a laceration of the right knee. The record reflects she was still under her doctor's care at the time of the trial in November, 1964. Her physician, Dr. Delbert Brown, testified that all of the x-rays taken while the plaintiff was hospitalized showed that there were no fractures or dislocations. Because Mrs. Williams complained of pain in her left hip, she was treated with diathermy and ultrasound. According to Dr. Brown's testimony, Mrs. Williams continued to complain of pain in her back during the month of March but her primary complaint was the painful left hip. He further testified that the symptoms in the hip region have persisted with radiation of the pain into the lower extremities, to the extent that as of the time of trial he felt that the pain might be due to nerve injury which could require surgical intervention.
Dr. William E. Smith, orthopedist, testified that Mrs. Williams had objective findings consistent with continuing difficulty in the low back region and he felt at the time of trial that she could have a disc involvement.
An award may not be based on mere possibility and any award made to the plaintiff, Mrs. Mary Williams, cannot include any amount for the possible disc involvement or for the possible nerve injury which might require future surgical attention.
We find the plaintiff has failed to prove that her complaint of shortness of breath was caused by this accident. Mrs. Williams was referred to Dr. Clay Waggenspack, a chest specialist, following her complaints of shortness of breath. Dr. Waggenspack testified that Mrs. Williams did not suffer from emphysema as the radiologist at Baton Rouge General Hospital had suspected, and furthermore, that emphysema would not be related to trauma in any event.
The trial court fell into error in considering the possibilities that the plaintiff might have a disc involvement and might require surgical attention to a possible nerve injury. We feel that the award of $15,000.00 granted to the plaintiff by the trial court was grossly excessive and should be reduced to $5,000.00.
As a result of this accident, the plaintiff, Mary D. Williams, was hospitalized for six days during which time numerous x-rays were taken. The injury to her back necessitated her wearing a lumbo-sacral support for a period of nine months. Because of the injury to her hip, she was subjected to diathermy, ultrasound treatments, and the injections into the area of her hip. At the time of the trial in November, 1964, she was still under the care of Dr. Brown.
Dr. J. Ralph Phillips, an ear, nose, and throat specialist, examined the plaintiff on May 22, 1964, and reported that an examination of the throat and larynx was negative but that some limitation of the movement of the left vocal cord was evident. He further stated, "It is the opinion of the undersigned *136 that the above findings in the larynx could be the result of an injury to the neck or the left side of the chest; however, this condition should clear up without treatment and leave no permanent disability." Both Mrs. Williams and her husband testified that prior to the accident, she had experienced no difficulty with her voice and that after the accident, the change in vocal quality was obvious. Dr. Phillips advised her to return to him for further examination if the condition persisted. She did not return.
Since this accident, Mrs. Williams' activities have been greatly restricted. She has been unable to participate in the choir activities at the church due to the hoarseness of her throat. Prior to the accident, she conducted a children's choir which according to her testimony, she is now unable to direct. She has been unable to take an active part in the family's activities such as picnicking, trips, and school activities. Her doctor has required her to stop working in her yard or with her flowers. Prior to the accident, Mrs. Williams was able to perform all of her duties around the house without assistance but since her injury, she requires a full time maid who takes care of all of the housework and the ironing.
The trial court awarded plaintiff, Leon D. Williams, Jr., the sum of $2,431.85 for damages to his automobile, for medical and other expenses incurred by the community of acquets and gains as a result of this accident. The record amply supports this award and the defendants do not question the correctness thereof.
For the foregoing reasons, the judgment appealed from is amended by reducing the award in Mrs. Mary Williams' favor from $15,000.00 to $5,000.00; as so amended and in all other respects, the judgment is affirmed, costs of this appeal to be paid by appellee; all other costs by appellant.
Amended and affirmed.