212 So.2d 754 (1968)
Chester W. ADDISON et ux., Plaintiffs-Appellees-Appellants,
v.
TRADERS AND GENERAL INSURANCE COMPANY et al., Defendants-Appellees.
No. 2392.
Court of Appeal of Louisiana, Third Circuit.
July 2, 1968.
*755 Hall & Coltharp, DeRidder (L. H. Coltharp, Jr., DeRidder, of counsel), for defendant-appellant-appellee.
Wood & Jackson, by W. R. Jackson, Jr., Leesville, for plaintiff-appellee-appellant.
Gold, Hall & Skye, by John F. Simon, Alexandria, for defendant-appellee.
Before TATE, FRUGE and SAVOY, JJ.
FRUGE, Judge.
This action emanates from an accident which occurred when a large cattle truck and trailer attempted to pass an automobile which was driven by Thelma Nash and in which plaintiff, Mrs. Chester Addison, was one of two passengers.
Mrs. Addison and her husband brought suit against the insurer of the Chevrolet vehicle, Traders & General Insurance Company, and against the driver of the cattle truck, Robert Tagg, his employer, Charles Faubion, and the liability insurer of the cattle truck, Travelers Insurance Company.
The trial court rendered judgment in favor of plaintiffs and against the defendants, Tagg, Faubion, and Travelers Insurance Company, and dismissed their claims against Mrs. Nash's insurer, Traders & General Insurance Company. From the above judgments, defendants, Tagg, Faubion, and Travelers Insurance Company, took a suspensive appeal. Plaintiffs, Mr. and Mrs. Addison, answered the appeal, seeking an increase of the award given them, and also effected a devolutive appeal against Traders & General Insurance Company.
The accident bringing about this litigation occurred on a foggy morning before dawn on Louisiana Highway 8, a few miles west of Leesville, Louisiana. Mrs. Littleton and plaintiff, Mrs. Addison, were guest passengers in the Chevrolet vehicle driven by Thelma Nash. This vehicle was proceeding toward Leesville in an easterly direction at a speed of about thirty or thirty-five miles per hour, when it was overtaken by a large cattle truck driven by Mr. Tagg. Mr. Tagg began a passing maneuver as the two vehicles approached a bridge, and just after the two vehicles reached the bridge, the right extreme front of the truck came into contact with the left extreme rear of the Nash vehicle. Following this was a subsequent impact whereby the right front of the cattle truck struck the left fender of the Chevrolet just over the rear wheel. Thereafter, the Chevrolet vehicle veered sideways in front of the cattle truck and was pushed by it past the end of the bridge and into the ditch on the left side of the highway.
It was stipulated that the travel portion of the bridge was nineteen feet wide. The evidence indicates that Louisiana Highway 8 is about nineteen and one-half feet wide at places other than on this bridge; the width of the cattle truck was eight feet, and that of the Chevrolet was about six and one-half feet.
*756 Mr. Tagg testified that his vehicle remained in the passing or left-hand lane of traffic during the entire passing procedure and that none of his truck or trailer ever crossed into the lane occupied by the Nash vehicle. He also stated that he believed he had sufficient room to pass the Nash vehicle on the bridge. He said that when he began his passing maneuver and actually got on the side of the Nash vehicle, Mrs. Nash increased the speed of her automobile, which action just preceded the first impact.
Mrs. Nash, Mrs. Littleton, and Mrs. Addison each believed that Mrs. Nash remained in her right-hand lane of traffic at least until the initial impact. Mrs. Nash testified that she noticed the truck behind her and that she speeded up because she knew she was about to reach a bridge and she did not want to be passed by that truck on the bridge. She stated that the first impact in the left rear of her automobile caused her to somewhat lose control of her vehicle and that the second impact on her left fender caused her car to turn sideways in front of the truck.
The trial court found, as a matter of fact, that Mrs. Nash was in her proper lane of traffic, at least when the initial impact occurred. From this finding he concluded Mrs. Nash was free from negligence and that the sole proximate cause of the accident was the negligence of Mr. Tagg in attempting to pass the Nash vehicle on a relatively narrow bridge in darkness and in fog, and in allowing the truck to strike the Nash vehicle in its proper lane of travel, causing Mrs. Nash to lose control thereof.
On appeal, the defendants-appellees emphasized the testimony of the investigating officers in an effort to show that the actual impact between the truck and the Nash vehicle occurred in the left or passing lane of travel. The two investigating officers stated that they found skid marks on the left shoulder of the road leading into the ditch where the vehicles came to a rest, and also "pressure marks" left by the cattle truck in the left lane of travel. These "pressure marks" ended at about the center of the bridge. Beyond that point, no investigation was made.
While we agree that this physical evidence indicates that the cattle truck was in its proper lane of travel from the time it was halfway across the bridge to the place where the vehicles came to rest, this evidence bears no probative weight in establishing the position of the respective vehicles at the time they first arrived at the bridge. All the witnesses substantially testified that the impact between the two vehicles occurred just after the two vehicles reached the bridge; and, it was at that point that Mrs. Nash lost control of her vehicle and concededly veered into the left lane of traffic. The physical evidence does not establish the respective positions of the two vehicles when they first came upon the bridge. Therefore we cannot say the trial court erred in finding Mr. Tagg negligent in allowing the truck to invade Mrs. Nash's travel lane and strike her vehicle there. Further, we can find no contributory negligence proximately causing the accident on part of Mrs. Nash. The fact that Mrs. Nash accelerated her vehicle as the truck was about to pass her in violation of R.S. 32:73 was not shown to have any causal relation to the occurrence of the collision.
Defendants-appellants contend that the damages awarded plaintiffs are excessive and improper; and plaintiffs-appellees have answered the appeal requesting an increase in the award.
In the accident, Mrs. Addison suffered a rather severe back injury, but the actual nature and extent of this injury was a major issue at the trial of the case.
Little purpose would be served here by our re-evaluating the testimony of the several doctors for plaintiffs and defendants concerning the nature of Mrs. Addison's back injury.
*757 Relative to this issue, the trial court stated:
"Considering the pros and cons of the medical evidence it is established that the plaintiff, Mrs. Maggie Addison, received a spraining injury to an old scoliotic back with a possible ruptured or herniated intervertebral disc in the lower lumbar area."
Due to the doubtful nature of most of the expert testimony involved in the case, the trial court apparently felt that plaintiffs' expert evidence was inconclusive to show that she had a disc injury; for, in his written reasons, the trial judge stated that "the court does not find as a positive fact that plaintiff, Mrs. Chester W. Addison, has a herniated disc, but believes the evidence substantiates the possibility of such an injury". Pursuant to this finding, the trial court awarded Mrs. Addison $1,500.00 for future medical and hospital expenses to cover the cost of an operation which would only be necessary if Mrs. Anderson had a herniated disc.
We agree that the expert testimony does not establish with sufficient certainty the probability of a disc injury to Mrs. Addison. But we disagree with the trial judge's awarding $1,500.00 as representing the expenses for an operation to correct such an injury. The mere possibility or conjecture that Mrs. Addison may need an operation some time in the future to correct her back injury is insufficient evidence to sustain an award for costs of such operation. Longoria v. Progressive Mutual Insurance Co., 204 So.2d 93 (La.App.2d Cir., 1967); Williams v. Bologna Brothers, Inc., 194 So.2d 131 (La.App.1st Cir., 1966).
The trial court also awarded Mrs. Addison $10,000.00 for pain and suffering as a result of the accident. The record indicates that Mrs. Addison suffered a severe back injury as a result of the accident. Following the accident, Mrs. Addison was hospitalized for fifteen days and placed in traction. She was subsequently hospitalized for briefer periods of time because of her back trouble. She received special treatment for some time after the accident. She has experienced almost constant pain or discomfort in her back since the date of the accident and has found it necessary to continue to take medicine to relieve this pain. She had to resign from her job; she has difficulty in performing the duties as a housewife and depends upon her husband to help her. Considering the seriousness of the initial injury and the extended length of time during which she has suffered pain and discomfort in her back and legs, we do not believe that the trial court's award of $10,000.00 to Mrs. Addison was excessive.
Appellees' request for an increase in the award made by the trial court in favor of Mrs. Addison is primarily premised upon the assertion that she has suffered a herniated disc. As noted above, however, the evidence does not sufficiently establish that Mrs. Addison has a herniated disc, and therefore, we feel that the award of $10,000.00 to her is quite substantial.
Appellees also contend that the trial court neglected to include in its award certain items of special damages in favor of Mr. Addison which were in the record.
Plaintiffs petitioned for certain special damages and $3,000.00 as future medical expenses. At trial, medical bills in excess of the items listed on the original petition were introduced into evidence. On this appeal, the appellants do not contest the legitimacy of any of the bills that were introduced, nor do they argue that any of these bills were not compensable items.
It appears that the trial court awarded special damages as prayed for in the petition, but failed to notice that bills in excess of those sums were properly placed in the record as future medical expenses. Mr. Addison testified that each of the bills presented in evidence were expenses occasioned as a result of the accident itself and not from other illnesses or injuries.
The bills not enumerated in the petition and which were incurred after the filing *758 of the petition and which were properly identified are as follows:
1. $707.30Hospital expenses at War Memorial Hospital.
2. $226.25Hospital charges for the making of a myleogram at Lake Charles Memorial Hospital.
3. $290.00Expenses incurred at Byrd ClinicFees of Dr. Hearn.
4. $97.48Drugs, etc., purchased from a pharmacy.
We shall amend the judgment of the trial court to provide for the above awards.
Other expenses (above the awards of the trial court) which appellees seek to recover are denied because they are not sufficiently proven by the record.
Appellant charges that the trial court's award of $500.00 to Dr. Schneider for his testimony in court was excessive.
R.S. 13:3666 provides that the district court shall fix the fees of expert witnesses called to testify in court after considering "the value of time employed and the degree of learning or skill required".
Dr. Schneider, an orthopedic surgeon, journeyed from Lake Charles to Leesville to testify. His testimony was extensive and it continued for hoursin fact, he spent nearly the whole day in court, which caused him to be absent from his practice in Lake Charles almost all of that day. For these services we feel that an award of $350.00 to be taxed as costs is quite adequate and that the fee of $500.00 as fixed by the district court was excessive.
For the foregoing reasons, the judgment of the trial court is amended so as to reduce the total award to Mr. Addison from $4,700.00 to $4,521.03, and as amended, the judgment is affirmed at defendant-appellants' costs.
Amended and affirmed.