GLADNEY, Judge.
Harrison McMillan and Catherine Harris McMillan, husband and wife, received personal injuries in an automobile accident on March 19, 1961 on U. S. Highway 71 in Bossier Parish, Louisiana. They instituted this suit naming as defendants Robert Pickett, employee-driver of a tractor and trailer unit owned by Boland Phillips, also named as a defendant, together with the latter’s liability insurer, American Surety Company *162 of New York. Following trial on the merits judgment was rendered in solido against all defendants in favor of Harold S. McMillan for the sum of $20,298.05 and in favor of Catherine Harris McMillan for $7,500.
The locus of the accident was some 12 miles south of Bossier City on U. S. Highway 71 at the junction of Redmond Spikes School driveway with said highway on its east side, making a T-intersection. At that point the highway runs north and south, is straight, level, blacktopped and is divided into two lanes by a white line. At the time of the accident the highway was wet, it was dark about 8 o’clock P.M. and raining hard.
Immediately before the accident the Mc-Millans were driving their sedan automobile north and approaching the school driveway intersection above referred to. Ernest S. Harrison, accompanied by his brother, Andrew C. Harrison, was driving south along the same highway, and, with the intention of executing a left turn across the east half of the highway in order to go to the Redmond Spikes School, he reduced his speed preparatory to executing the turn. Following and overtaking the Harrison car Robert Pickett was driving a tractor-trailer unit weighing approximately 25000 pounds at a speed of about 45 miles per hour. Upon observing the taillight of the Harrison car from 100 to 125 feet ahead Pickett slowed the speed of his vehicle by removing his foot from the accelerator, and, when 50 feet away he concluded the vehicle was stationary, he promptly undertook evasive action to avoid a collision by sharply turning to the right and going off the highway on the west side. Pickett further testified that he had no knowledge of striking the Harrison car and did not know that any portion of his vehicular unit came in contact with any other automobile.
Ernest Harrison testified he thought the approaching truck had placed his car in a precarious position and that he would be unable to execute his left turn safely, whereupon he sought to avoid an impact with the following vehicle by depressing the accelerator and turning towards the right. It appears doubtful he had time to execute this maneuver before his automobile was struck with force which inflicted extensive damage to its right rear and knocked it into the northbound or east traffic lane of the highway where it was immediately struck by the McMillan car. Harrison also testified that his car received a further impact from a Chevrolet sedan being driven south by Mary Harper and following the tractor-trailer unit driven by Pickett.
The accident was investigated by Troopers C. E. Shaffett and Donald W. Eason who arrived at the scene of the accident before the vehicles driven by McMillan, Harrison and Pickett were moved. These state highway troopers testified as to the locus of impact of the tractor-trailer unit with the rear of the Harrison car, as to the point of impact between the Harrison car and the McMillan car, but were unable to state where the point of impact was as to the car driven by Mary Harper, although the Plarper car did strike the Harrison car. This fact is conceded but damage to the Harper vehicle was negligible and the Har-risons testified the second impact was slight.
The trial court found the evidence was sufficient to warrant a conclusion that the Harrison vehicle was struck by the tractor-trailer unit. This finding of the court is the primary error with respect to liability assigned by appellants to the judgment.
It is earnestly contended plaintiffs have not carried the burden of proof by establishing with a preponderance of the evi-dnece that the truck driven by Pickett collided with the Harrison car. It is pointed out that testimony of the two Harrisons is unsatisfactory. Ernest Harrison did testify he thought he would speed up and pull off the highway to his right and had succeeded in getting his right front wheel onto the right hand shoulder of the road when it was struck from the rear by the truck, which blow forced him into the path of the McMillan car. Andrew Harrison did not cor- *163 robórate the testimony of Ernest as to the above maneuver, but testified Ernest was attempting- to make a left turn at the time he was struck from the rear and then later by the automobile driven by Mary Harper. Both witnesses said the Harrison car had not crossed into the east portion of the highway before it was struck from the rear. Counsel argues the testimony of the two Harrisons is incredible and that in truth Ernest Harrison was engaged in executing a left turn at the time of the accident when struck by the Harper automobile. Further, it is contended that the testimony of Pickett, the truck driver, that his car had no collision with another automobile is more reasonable and should be accepted by the court.
The trial court in holding there was an impact between the truck and the Harrison automobile, relied upon the testimony of Troopers Shaffett and Eason. These witnesses, after an on the spot investigation, testified that their search disclosed scratches and a smear of mustard on the left tandem wheel of the truck. The mustard as so identified was compared with that found in the backend of the Harrison vehicle where a pint jar of mustard had been broken and spilled from the vehicle. Counsel for ap-pellees argue that the tractor had large wheels and in that area of contact nothing else on the trailer would be damaged except the scratching of the metal of the wheels and no marks would appear upon the tires.
The question presents simply a factual issue and although the testimony is conflicting the preponderance of evidence supports the opinion of the trial judge. A question of credibility is raised in the testimony of witnesses involving that of the Harrisons and the members of the state police. The trial court concluded that their testimony was correct and we accordingly agree there was no manifest error.
Counsel for appellants also question the award for damages as made by the trial court, contending that the award in favor of McMillan of $15,000 for injuries is not justified and no evidence was presented to support an allowance of $4,000 for loss of earnings; likewise, it is contended that the award to Mrs. McMillan of $7,500 is certainly excessive and should be reduced. Medical testimony was furnished by Dr. John M. Goslee, a specialist in orthopedic surgery, who treated Mr. and Mrs. McMillan until they had reached a maximum degree of recovery. Both were admitted to the Highland Hospital on March 19, 1961. McMillan was hospitalized for a period of ten days and his wife for a period of eight days. Following examination and x-rays the diagnosis of McMillan was contusions to the right arm; a comminuted fracture of the fibula, proximal right; fracture of the patella, left; also there were numerous bruises and minor contusions over the body. Both legs were placed in plaster casts extending from just above the ankle to the upper thighs. These casts remained in place from March 22 until April 11, 1961. At the time this patient was discharged from the hospital the doctor thought disability would last for a period of about two months and thereafter minimal disability was expected. The doctor was of the opinion there would be a 10% permanent .disability to the right knee which at the time of trial, May 7 and 8, 1963, still disclosed swelling and weakness. The fracture of the patella of the left knee went all the way through the kneecap. However, this injury healed normally and did not require surgery. There is no doubt during the period of recuperation McMillan experienced a considerable amount of pain and was still experiencing discomfort as of the time of trial.
At the time of the accident McMillan was employed as a sales service representative for Howard Crumley Chevrolet Company on a salary plus commission basis. Approximately three weeks after the accident he was back at the job wearing a cast on both legs and walking with the aid of crutches, but his duties were confined primarily to answering the telephone. The crutches were continued for a period of 30 days after the casts were removed. This limitation *164 lasted for two or three weeks when he returned to his service salesman work. During this period of time his salary was paid by his employer hut he sustained a loss of some commissions. He testified that one of his reasons for changing from the sales service position to a shop mechanic after the accident was because of personal distaste for the sales representative position, although the change was brought about by physical disability which required more exercise of his legs than did the job of shop mechanic. Unfortunately, proof is inadequate to show the loss of earnings claimed, and this award in the judgment must be disallowed. We are impressed by the fact that McMillan did sustain serious and painful injuries to his legs with a permanent disability which Dr. Goslee considered would result in a loss of 10% function of the right knee. Accordingly, we hold that the finding of the trial judge in allowing $15,000 by reason of the personal injuries is not excessive.
Following the initial examination by Dr. Goslee, Mrs. McMillan was found to have multiple abrasions and contusions over her body and with fractures to eight of her ribs. Abrasions and contusions were found on the left front area, left upper eyelid, right knee, right leg and left forearm. The fractures were treated by application of a rib belt. After leaving the hospital she was treated as an outpatient. It was estimated that her disability would have a period of from six to ten weeks from time of entry. She was still suffering from discomfort as of the date of trial. With respect to the fractures to the ribs no appreciable displacement or fragments were noted. Dr. Goslee testified that Mrs. McMillan was in intense pain and required administration of sedatives for relief. However, immediately after leaving the hospital Mrs. McMillan returned to her work and thereafter did not suffer a great amount of discomfort. In view of her satisfactory recovery we think the award of $7,500 by the trial court is excessive and should be reduced to $5,000.
For the reasons hereinabove set forth the judgment in favor of Harold S. McMillan is reduced by the sum of $4,000 to the principal sum of $16,298.05, and as so amended, the judgment is affirmed.
The judgment in favor of Catherine Harris McMillan is reduced by the sum of $2,500 to the principal sum of $5,000, and as so amended, the judgment is affirmed.
The cost of this appeal is taxed against appellees.