LOTTINGER, Judge.
This case is before us on the question of quantum alone, liability having been stipulated by all of the defendants. Ulysse Daigle, Jr., minor son of appellee, was seriously injured as a result of an intersectional collision in October, 1965, in Donaldsonville, Louisiana.
After the accident, he was taken to a doctor’s office in Donaldsonville where emergency first aid treatment was administered. He was subsequently taken to Charity Hospital in New Orleans whereupon he was rushed into an examining room. *12 As a result of the accident, young Daigle suffered a linear skull fracture, partial traumatic amputation of all the toes of his right foot and a laceration across the tip of his right foot, termed a “skin flap”. It was necessary for young Daigle to remain in the hospital from October 24 until November 8, 1965. He was semi-conscious for four days following the accident. It was necessary that he be fed intravenously for the first two and one-half days. After leaving the hospital it was necessary that young Daigle see a local doctor daily for about one week, and also necessary that he return to Charity Hospital for examination and treatment. For two weeks following the accident, he was bothered with double vision and during his period of convalescence, he had daily headaches. This accident happened on October 24, 1965, and it was not until mid-December, 1965, that young Daigle was able to put any pressure on his foot.
The record points out that Ulysse Daigle, Jr. was born on June 24, 1949. At the time of the accident, he was in the ninth grade. This sixteen year old youngster enjoyed participating in sports, and played little league baseball for two years. His parents owned a small grocery store, and he helped them in it. He also worked part time in the cane fields and in cutting lawns.
Because of the necessary absence from school occasioned by his injury, young Daigle failed the ninth grade. He became extremely sensitive about the appearance of his foot. Because of his embarrassment, he rarely plays with his younger brother and sisters, and works less frequently in his parents’ store.
The lone physician who testified assigned a 30% disability as to the foot. The doctor further testified that the amputation sites would remain mildly tender, and that this would be permanent, young Daigle would have difficulty walking on uneven surfaces, and though he would not have acute pain, he would occasion some discomfort after a prolonged period of time, and this discomfort would be more than the average person.
The Trial Court awarded judgment in favor of Ulysse Daigle, as Administrator of and on behalf of the estate of his minor son, Ulysse Daigle, Jr., in the amount of $12,500.00, together with legal interest from date of judicial demand plus an expert witness fee of $75.00 for the doctor who testified. It further awarded Ulysse Daigle, individually, the sum of $841.95 for special damages. From this judgment, defendants-appellants, Gus Guinchard, Jr., New Amsterdam Casualty Company and The Travelers Insurance Company, have appealed, and the plaintiff has answered the appeal seeking an increase in the award of $12,-500.00 for and on behalf of the estate of Ulysse Daigle, Jr. and also an increase in the expert witness fee.
Defendants-appellants strongly argue that the amount awarded by the Trial Court for pain and suffering is clearly an abuse of discretion on the part of the Trial Judge.
Appellants rely heavily on the case of Larned v. Wallace, 146 So.2d 434, 440, La. App. 3rd Cir. (1962), writs denied, wherein:
“Plaintiff suffered a compound, com-minuted fracture of the bones of the left great toe requiring that it be amputated through the metatarsal phalangeal joint. Subsequently a small amount of skin grafting was performed to promote faster healing. About 6 months after the injury the foot had to be reoperated and small pieces of dead bone removed because a small draining sinus had persisted in part of the amputation scar.
“Plaintiff spent a total of 37 days in the hospital and was on crutches about 2 months. He was finally discharged by the doctors 10 months after the accident. At the time of his discharge, the only *13 residual effects of the injury were a small area of anesthesia at the amputation site and a sensation of imbalance in walking. However, it was the opinion of the doctors that the plaintiff would in time overcome the imbalance. The permanent disability to the foot was estimated at about 18%.”
The Court in Larned v. Wallace, supra, fixed the award for pain, suffering and disability at $5,000.00 and used Treadaway v. Marphis, 73 So.2d 215, La.App. 4th Cir. (1954) where the award was for $4,000.00 and injuries consisted of fractures of the lower leg and ankle, causing muscles to become atrophied and requiring prolonged orthopedic treatments to obtain only partial use of the ankle; Plaisance v. Pellerin, 102 So.2d 499, La.App. 1st Cir. (1958), wherein plaintiff was awarded $6,000.00 for severe injury to a knee which resulted in 25% permanent loss of use of the leg; and Brantly v. City of Baton Rouge, 98 So.2d 824, La.App. 1st Cir. (1957), where a 50 year old lady was awarded $2,500.00 when she suffered a 10% permanent disability as a result of traumatic arthritis of the ankle and foot, as its guides in fixing such an award.
In seeking to have the award for pain, suffering and disability increased, plaintiff cites Green v. American Home Assurance Company, 169 So.2d 213, La.App.2d Cir. (1964) and Larned v. Wallace, supra. In the Green case, the Court awarded a married woman, who has sustained numerous cuts, bruises, and contusions over the body, loss of a portion of the left big toe, the fracture of several bones of the foot, and was rendered unconscious, the sum of $7,500.00. In citing both Green v. American Home Assurance Company, supra, and Larned v. Wallace, supra, plaintiff contends that the injuries young Daigle received are much more severe than those received by the plaintiffs in the above two cases.
Plaintiff has cited several cases, to-wit: McMillan v. Phillips, 194 So.2d 161, La. App. 2d Cir. (1967), wherein injuries consisted of a comminuted fracture of the left fibula and a fracture of the right knee cap; Freeman v. Liberty Mutual Company, 175 So.2d 659, La.App. 1st Cir. (1965), here there was injury to an ankle and foot; Daigle v. Hardware Dealers Mutual Fire Ins. Co., 165 So.2d 643, La.App. 1st Cir. (1964), wherein the orthopedist who attended the plaintiff characterized the injury as “a very severe foot injury”; and Christ v. State, 161 So.2d 322, La.App. 3rd Cir. (1964); which was also a foot injury case. These cases cited by the plaintiff deal primarily with injuries to a foot or angle, and are not limited to a toe or several toes. We therefore feel that these cases are not appropriate.
The plaintiff has most correctly brought to our attention that under Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) and Ballard v. National Indemnity Corporation, 246 La. 963, 169 So.2d 64 (1964), the “Doctrine of Uniformity” has been discarded in Louisiana. In conformity with the above, and with the pronouncement of the Supreme Court in the Ballard case, wherein at 169 So.2d 64, 67, the Court stated:
“On appeal, if the appellate court affirms the lower court and quantum is the issue, the court should then review all the facts and circumstances on whicfi the lower court based the quantum of award, but this review is confined to determining whether there has been an abuse of the ‘much discretion’ vested in the trial court in assessing damages. After a review of all the facts and circumstances, if the appellate court finds that there has been an abuse of discretion, the amount of the award should be increased or decreased as the case warrants.” (Emphasis added)
We have reviewed all of the facts and circumstances pertaining to the injuries this young man received and are of the opinion *14 that the award as determined by the Trial Judge was not an abuse of his discretion, and therefore affirm same.
In his answer to the appeal by the defendants, plaintiff contends that the Trial Judge was in error in allowing only $75.00 as an expert witness fee. Dr. Stuart I. Phillips, the expert witness, is a specialist in orthopedic medicine, practices in New Orleans, and is also an assistant professor of medicine at the L.S.U. School of Medicine. On the day of the trial, Dr. Phillips traveled from New Orleans to Baton Rouge, and testified for approximately one hour.
In arriving at an adequate fee for an expert witness, the Court must determine the “value of the time employed by the expert and the degree of learning or skill required,” Daigle v. Hardware Dealers Mutual Fire Ins. Co., supra, “the time the experts are on the stand”, and “also the time they are required to take away from their regular duties to stand by near the courtroom to be ready to testify at the convenience of the Court,” Pickett v. Norwich Union Fire Insurance Society, 119 So.2d 566, La.App. 1st Cir. (1960). We also are of the opinion that the time taken away from their regular duties should include the time spent traveling to and from the court and their offices.
We are of the opinion that the expert witness fee as fixed by the Trial Court is excessively inadequate in light of the training of Dr. Phillips, the travel time and time actually spent testifying, and said fee is hereby raised to $200.00.
Therefore, for the above and foregoing reasons, the judgment of the Trial Court is amended so as to provide an expert fee of $200.00, and as amended, is affirmed. All costs to be paid by the defendants-appellants.
Judgment amended and affirmed.