TATE, Judge.
The plaintiff, Miss Hathorn, was injured as the result of a two-car collision. She was a passenger in a vehicle driven by Mrs. Gussie Edwards, which was hit by another car driven by Earl McKay, a minor. Miss Hathorn sues McKay, his father (Emmerick), their liability insurer *76 (State Farm), and the liability insurer (Phoenix) of the Edwards automobile.
The trial court held that McKay’s negligence was the sole proximate cause of the accident and rendered judgment against Earl McKay (by then emancipated), his father, and the liability insurer. These defendants appeal.[1]
This McKay-State Farm appeal urges as error the trial court’s holdings (a) that Earl McKay was negligent and (b) that Mrs. Edwards was free of negligence contributing to an accident.[2] The appeal also (c) questions the award for personal injuries as excessive, as well as (d) raises an alleged procedural mistake in rendering judgment against young McKay himself.
The Negligence — Contributory Negligence Issues
The accident occurred on a rural blacktopped highway. This was during the early morning (6:30 A.M.) hours of this October morning, when still dark. No traffic other than the two vehicles was on the road.
The Edwards vehicle had backed from a driveway and then stalled, diagonally athwart the center line of the highway. Mrs. Edwards repeatedly (3-5 times) tried without success to re-start her engine — the starter whirred, but the engine did not fire.
During these attempts to re-start, Mrs. Edwards and her two passengers (the plaintiff Miss Hathorn and Mrs. Doris Lu-neau [3]) saw the lights of the oncoming northbound McKay car. At the time, the front of the Edwards car, facing southeasterly, protruded about six feet into the northbound lane, in which McKay was approaching.
Mrs. Edwards switched her headlights off and on repeatedly to warn the oncoming driver of their presence in his lane. On McKay’s continued rapid unswerving approach, one of the occupants yelled, “We’d better get out of here !”
Mrs. Edwards and Mrs. Luneau were able to leave the car before the impact, but the plaintiff Miss Hathorn — who had to cross the rear seat to alight — was just descending from the left rear door when the collision occurred. She herself was severely injured. (Mrs. Luneau suffered less serious injuries when knocked to the. pavement by the backwards thrust of the Edwards Chevrolet.)
Earl McKay, 17 at the time of the accident, testified that he saw the other vehicle as he approached. However, he thought it was on its own side of the highway. He noticed the headlights being flicked on and off, but he thought it was a signal for him to dim, and he dimmed his lights in response, he says.
McKay did not realize the vehicle was stalled until too close to stop. He applied his brakes vigorously, but skidded 118 feet into the stalled car, knocking it backwards 8 feet.
Insofar as the evidence is contested, we find the trial court’s further findings, in its well-reasoned detailed opinion, to be supported by the preponderance of the evidence :
Young McKay was approaching at a highly excessive rate of speed, admitted by himself to be 70-75 mph immediately fol *77 lowing the accident. He had a clear view of the Edwards’ car for a least 1,000 feet before the impact, despite the long sweeping curve. He was not blinded by the diagonally pointing Edwards lights.
Under these circumstanecs, we find no error in the trial court’s conclusion that Earl McKay’s negligence was the sole proximate cause of the accident.
McKay continued at a high rate of speed towards a vehicle in his path clearly visible to him and apparently in distress, as sig-nalled by the lights being flicked on and off. He was clearly negligent in his heedless onset without slowing and putting his car under such control as to avoid the hazard ahead reasonably to be anticipated. Rowe v. Travelers Insurance Co., 253 La. 659, 219 So.2d 486; Eubanks v. Wilson, La.App. 3d Cir., 162 So.2d 842.
The cited decisions likewise support the trial court’s conclusion that neither Mrs. Edwards, the driver of the disabled vehicle, nor her passengers were negligent. Their conduct did not unreasonably endanger themselves, in view of the untravelled locality, the unexpectedness of the vehicle’s stalling and of its failure to re-start, and the short ten seconds or so during McKay’s continued onset in which they could appreciate the danger and take steps to minimize it.
The decisions are readily distinguishable upon which the defendants-appellants rely in arguing negligence on the part of Mrs. Edwards or her passengers. For instance, Vowell v. Manufacturers Cas. Ins. Co., 229 La. 798, 96 So.2d 909, concerns an unlighted parked vehicle which the oncoming driver had no reason to anticipate. Herring v. Holicer Gas. Co., La.App. 2d Cir., 22 So.2d 868, concerns a stalled truck with blinding lights on a heavily travelled highway, and no warning lights were blinked out by the driver to warn the oncoming vehicle.
Other decisions cited concerning negligence of drivers or passengers of disabled vehicles involve inaction or unreasonably little action during a longer period of time. For instance, Thibodeaux v. Jack’s Cookie Corp., La.App. 3d Cir., 169 So.2d 918, concerns an instance where a driver and a passenger were held to be negligent for failing to warn oncoming traffic and remaining in a stalled car on a main highway for fifteen minutes.

The Quantum Issue

Miss Hathorn received an award of $10,000 general damages for her personal injuries. Aside from various lacerations, this 21-year-old girl sustained compound comminuted fractures of both lower bones in her left leg, requiring prolonged treatment (nine months in a cast and on crutches), with residual pain even a year later and with probable small residual permanent limitation of motion.
The trier of fact’s large discretion in determining general damages, LSA-Civil Code Article 1934(3), Lomenick v. Schoeffler, 250 La. 259, 200 So.2d 127, Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149, was not abused, see, e. g., McMillan v. Phillips, La.App. 2d Cir., 194 So.2d 161.
Likewise, the award of $285 for future medical expenses (which the appellants suggest should instead be $170) does not appear manifestly excessive.[4] The doctor estimated the lower figure as correct if only two days hospitalization at $60-75 daily were involved in removing a screw, but he also stated three-four days and a higher surgical fee would be required if general instead of local anesthesia were employed.

The Procedural Issue

The McKays and State Farm additionally raise a procedural argument, however, that the judgment against Earl McKay himself is null. They contend that Earl was nei *78 ther cited nor served and had made no voluntary appearance in the suit.
Until some time after this suit was filed, Earl was an unemancipated minor. Ha-thorn’s original petition names as defendant “Emmerick McKay, individually and as Administrator for the estate of his minor son, Earl Dean McKay. * * * ”
Citation, as prepared by the office of the parish clerk of court, was addressed to “Emerick Me Kay, Effie, La.” It thus did not qualify his capacity. Citation was personally served on the senior McKay, with an attached certified copy of the petition in this suit naming him defendant both individually and as administrator of his son’s estate.
The answer to the petition was filed by “Emmerick McKay” (and State Farm). It did not indicate that McKay was answering only in his individual capacity, but prayed for judgment “in favor of defendants Em-merick McKay, individually and as administrator of the estate of his minor son, Earl Dean McKay * * * ”
After young Earl’s emancipation, the present plaintiff filed a supplemental and amending petition alleging Earl’s individual capacity and praying for judgment against Earl and the other defendants. The answer to this supplemental petition by “Em-merick McKay” (again, without qualifying the capacity in which he appeared) and by State Farm admitted all allegations of fact in the supplemental petition and again prayed for judgment “in favor of defendants, Emmerick McKay, individually and as administrator of the estate of his minor son, Earl Dean McKay * * * ”
Earl himself never filed an answer to this supplemental petition, which had without objection been served upon the counsel for State Farm. The latter had been retained to represent the McKays after service of the original petition.
It is true that at that time Earl individually was not made defendant. As an unemancipated minor, he had no procedural capacity to be sued, so therefore his father, as administrator of his estate, was the proper party defendant in this action to enforce an obligation against the minor. LSA-CCP Art. 732. (Although the father is individually liable for his minor son’s tort, Civil Code Article 2318, the minor himself remains personally liable for such tort, Civil Code Articles 1785(5), 1874, if properly made party to the suit through parent, tutor, or appointed attorney, LSA-CCP Art. 732, Redd v. Bohannon, La.App. 3d Cir., 166 So.2d 362.)
The defendants-appellants insist that Earl was never cited nor served, since the initial citation was addressed only to his father, and since the supplemental petition was not served on himself individually. Under LSA-CCP Art. 1201, civil proceedings via ordinaria are null without citation and service thereof, unless the absence is cured by waiver, or (LSA-CCP Art. 7) by general appearance.
Here, however, Earl was properly made a party to the suit through service of citation and the original petition upon his father. The latter was identified in the petition as made defendant both individually and as administrator of Earl’s estate.
The citation did not specify that the father (so described in the attached petition) was served both individually and also as Earl’s administrator, but neither did it qualify the capacity in which served. However preferable such specification might have been, there is no legal requirement under the 1960 Code that the citation be so qualified. See LSA-CCP Art. 1202, which provides that the citation must contain the name of the party to whom addressed, but which contains no requirement that it state the capacity in which cited.[5]
*79 We therefore conclude that the original service upon and citation of Earl’s father as administrator of his estate conferred jurisdiction upon the trial court. LSA-CCP Art. 6, to render judgment binding upon Earl and any property or earnings he may have. That citation notified Earl’s father both individually and as Earl’s administrator of the present action brought for judgment against both Earl’s father and Earl’s own estate.
The father, as administrator of Earl’s estate, Civil Code Article 221, was authorized to retain counsel to represent Earl’s interest, LSA-CCP Arts. 4262, 4264, 4501. Further, the authority of Earl’s father, as proper representative to defend the suit, continued until proper substitution was made of Earl after the latter’s emancipation. LSA-CCP Art. 805 (as amended in 1968). The general rule is that an attorney’s authority to represent his client continues until completion of the project for which retained, unless the attorney-client relationship is terminated by the parties or by operation of law. 7 C.J.S. “Attorney and Client” § 108; La.Civil Code Articles 3002, 3027.
In Louisiana, the legal principles applicable to regulate the attorney-client relationship are those set forth in the articles in Civil Code Articles 2895-3034, relating to mandate. Succession of Zatarain, La.App. 1st Cir., 138 So.2d 163, and jurisprudence there cited and summarized. While the mandate expires because, inter alia, of a “change of condition of the principal”, Article 3027(3), this refers only to “every change of status which renders the principal incapable”, Planiol Civil Law Treatise, Volume 2, Section 2263 (LSLI Translation, 1959), which thus did not in-elude the relieving of the disabilities of minority through emancipation or majority.
We are cited to no authority by which a minor achieving majority is relieved of any obligation or contractual relationship validy entered into on his behalf during minority. Thus, in the absence of termination of the mandate, the attorney retained by Earl’s father to represent him in these proceedings continued to do so after Earl’s emancipation. (This attorney, for instance, perfected the present appeal for Earl, emancipated, following trial judgment against him.)
Earl received notice of his substitution individually for his father as administrator, through service of the supplemental petition upon counsel retained to represent his estate. This counsel appeared at the trial, which proceeded without objection as to lack of any answer filed by Earl personally.[6] A valid judgment may be entered even in the absence of default or answer, if the party waives his right to insist upon same by going to trial without objection. Ducote v. Ducote, 183 La. 886, 165 So. 133; Henderson v. Hollingsworth, 158 La. 921, 105 So. 14.
We therefore find that judgment was properly rendered against Earl individually. (Actually, since a minor and his estate are liable for his torts, LSA-CC, Arts. 1785(5), 1874, his property being the common pledge of his creditors, Civil Code Art. 3183, the judgment could be executed against him individually following judicial emancipation relieving of the disabilities of minority, Civil Code Art. 385, whether or not before judgment he had been substituted individually for his father representing him as administrator of the minor’s estate.)

*80
Expert Witness Fee

The trial court fixed the expert witness fee of Dr. Cedric Lowery, orthopedist, at $100. Dr. Lowery testified by deposition.
The defendants-appellants complain that all parties had stipulated to a fee of $50, in accord with a statement from the doctor. Tr. 67. While the trial court has a large discretion in fixing such expert fees, LSA-R.S. 13:3666, which we would not disturb had it been exercised, we believe that the $100 fee was inadvertently fixed, in view of the stipulation for $50. We will therefore reduce it to the lower sum.

Decree

For the reasons assigned, we affirm the judgment of the trial court in all respects, except that the expert witness fee allowed Dr. Lowery is reduced from $100 to $50. The defendants-appellants are assessed with all costs.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.

. The trial court dismissed the suit against Phoenix. The record does not reflect any appeal by Miss Hathorn from this dismissal, although in brief counsel suggests this is done.

. This alternative argument is apparently advanced to enforce the McKay-State Farm parties’ right to contribution, in the event Mrs. Edwards is a joint tort-feasor and thus liable in solido with them. See Emmons v. Agricultural Insurance Co., 245 La. 411, 158 So.2d 594 and Yidrine v. Simoneaux, La.App.3d Cir., 145 So.2d 400.

.Who filed a similar suit for personal injuries which was consolidated for trial and appeal with the present. See Luneau v. Edwards, 236 So.2d 80, (decided this date).

. The other $1,500 special damages are not questioned.

. Prior to the enactment of the Code of Civil Procedure in 1960, it was required that “citation * * * shall be addressed to the party represented, through the representative, stating his capacity * * ” La.R.S. 13:3471, as amended through *79 1954. With the enactment of the new Code, however, this detailed requirement was dropped from the Revised Statutes, La.R.S. 13:3471, as amended hy La. Acts 1960, No. 32, Section 1, and is not found in the new Code, LSA-CCP Arts. 1201-1203.

. Earl himself, of course, testified at the trial. Furthermore, counsel retained by him in his own suit for damages against the Edwards’ insurer was present at the trial representing him in the consolidated trial of all suits arising out of the accident. Tr. 61-62. (Earl did not appeal the dismissal of his own claim.)