HOOD, Judge
(dissenting).
I agree that the driver of the pickup truck was negligent in operating his truck on a public highway without taillights. I disagree with my colleagues, however, in their holding (reversing the trial court) that the driver of the following vehicle, Eligh Smith, was free from negligence.
The majority specifically recognizes the well settled rule of law, “that a motorist is held to have seen an object which, by the use of ordinary care and prudence, he should have seen in time to avoid an accident, and he must drive at such a speed that he can stop within the range of his vision.” See Lewis v. Quebedeaux, 134 So.2d 93, (La.App. 3 Cir., 1961), and numerous other cases in which that rule has been applied. This general rule is often referred to as the “assured clear distance rule,” and the majority concedes that “there is little dispute” as to that law.
As also indicated by my colleagues, in some instances exceptions to this general rule may be made, and when that occurs the motorist who runs into a stationary object on the highway may be exonerated from fault. Exceptions to this general rule may be made, however, only where such “unusual conditions" and “extraordinary circumstances” exist in a particular case that the motorist is unable to see the stationary object in the road ahead of him in time to avoid an accident, even though he was maintaining a proper lookout and was exercising the care of a reasonable and prudent driver.
Our Supreme Court held that the general rule did not apply, because of unusual and extraordinary circumstances, in the leading cases of Kirk v. United Gas Public Service Co., 185 La. 580, 170 So. 1 (1936); Gaiennie v. Cooperative Produce Co., 196 La. 417, 199 So. 377 (1940); Dodge v. Bituminous Casualty Corporation, 214 La. 1031, 39 So.2d 720 (1949); and Vowell v. Manufacturers Casualty Insurance Company, 229 La. 798, 86 So.2d 909.(1956). The Kirk case involved a collision with the body of a dark colored yearling which had been killed earlier and left on the highway. The other three cases involved collisions with parked vehicles. In each such case the driver of the moving vehicle ran into a stationary object on the highway, and the court found that the circumstances were so unusual and extraordinary that no motorist who was carefully watching the highway ahead of him could reasonably have seen the object in time to avoid a collision.
These decisions of our Supreme Court have been followed by other courts of this state, including this court. Recently, however, a majority of this court expanded the exception to the general rule, and held that the driver of a motor vehicle was free from negligence when he ran into the rear of a moving vehicle, and where no unusual and extraordinary circumstances existed other than the fact that the lead vehicle’s taillights did not meet the specifications required by law. See Stelly v. Fidelity & Casualty Company of New York, 201 So.2d 24 (La.App. 3 Cir., 1967).
In the Stelly case the majority noted that the above stated general rule, which they referred to as the “assured clear distance rule,” is being eroded. And, they stated that, “The thrust of this jurisprudence is a continuous departure from the rule that a night motorist must drive with such meticulous care that he can bring his vehicle to a complete stop within the range of vision afforded by his headlights.” They then proceeded in that case to emasculate the general rule which they acknowledge in the instant suit is still the law. I dissented in the Stelly case.
In the instant suit my colleagues have gone further. Here, the lead vehicle, a *247 pickup truck, was being driven at a substantial speed in its proper lane of traffic, and the following motorist, Eligh Smith, overtook it and ran it down. It is inconceivable to me, under the facts presented here, that Smith did not see the truck ahead of him. The sole basis for the majority’s holding is that the taillights on the truck were not burning and that the truck was not being driven as fast as was the overtaking Smith car.
Substantially the same issues are before us here as were presented in the Stelly case. The facts here, however, are much stronger to the effect that the general rule should be applied. The material facts were not stated very fully in the majority opinion, and I feel that a further discussion of them is necessary.
Shortly before the collision occurred the pickup truck was in the lead, the Adams station wagon was second, and the Smith car was in the rear. The pickup truck was being driven between 30 and 35 miles per hour. Adams was driving 65 miles per hour as he approached the truck from the rear, and Smith also was driving at a speed of about 65 miles per hour behind Adams. Adams saw the truck ahead of him even though he had his lights on low beam. He then switched his lights on high beam, applied his brakes, swerved to his left and went safely around the truck. The action of Adams in turning on his bright lights clearly illuminating the truck, suddenly applying his brakes and swerving sharply to his left should have served as an adequate warning to Smith that something was on the highway.
Smith, who apparently was a considerable distance behind, saw Adams switch his lights to high beam and swerve to his left to go around the truck. Smith then immediately switched on his bright headlights also, and he left his headlights on high beam until the accident occurred. The pickup truck should have been much more obvious to Smith than it was to Adams, since Smith had his bright headlights on at all times as he approached. Smith offers no explanation at all as to why he didn’t see the truck ahead of him.
After passing the truck, Adams reached into his glove compartment and turned on his “emergency blinker lights” to warn Smith of the presence of the truck. Adams then got ahead of the truck, reduced his speed to that of the pickup truck, and then with his blinker lights on he began weaving from one lane of the highway to the other. Each time he went into his right lane, Smith could not help but see the truck silhouetted against Adams’ lights, if Smith had been maintaining a proper lookout. The collision occurred while Adams was weaving back and forth across the highway, and when he was about 100 feet in front of the pickup truck. Smith offers no excuse for having failed to see the truck under all of those circumstances. He, in fact, did not even see the emergency blinker lights on the Adams vehicle.
Mrs. Adams was lying down in the station wagon when her husband first started to pass the pickup truck. She sat up as they were engaged in the passing maneuver, she looked back and saw the Smith vehicle behind, and she then saw the parking lights on the front of the truck come on for about two seconds. After this occurred, Mr. Adams reduced his speed and began weaving from lane to lane in front of the truck. Mrs. Adams testified that about 25 seconds elapsed between the time she sat up in the station wagon and the time of the accident. The majority brushes this testimony aside with the statement that her estimate “is obviously too long.” I think my colleagues erred in reaching that conclusion. In the first place, Mrs. Adams’ estimate of the time was actually tested by a clock in the courtroom, and this test indicated that about 25 seconds had elapsed. Secondly, the trial judge found her estimate to be correct. Third, at least that much time must have elapsed in order for all of the things to occur which did take place between the time she sat up in the station wagon and the time of the acci *248 dent. And, finally, Smith must have been some distance behind Adams, because Smith stated that he could see the taillights of the Adams car just before it swerved to pass the truck, but that he was not close enough to see whether it was a car or a truck. The amount of time which elapsed is immaterial except that it shows that Smith had adequate warning that something was in the road ahead of him long before the accident occurred.
The evidence also shows that although the taillights of the pickup truck were not burning when the accident occurred, there were two taillights on the truck, each of which was equipped with a “reflective lens” which was three to four inches in diameter. The surfaces of these lenses were designed to reflect light from the headlights of following vehicles, even though the taillights of the truck were not burning. The testimony of Adams and the investigating officer confirms the fact that the taillight lenses on the truck did reflect light from the headlights of following vehicles.
The highway where the accident occurred was straight and level. Smith concedes that visibility was good, that he was not confronted with the oncoming headlights of other vehicles, and that there was nothing to distract him from watching the highway ahead of him. The evidence shows that he did not apply his brakes or reduce the speed of his car before the collision occurred.
Under these facts the majority holds that there existed such unusual and extraordinary circumstances that Smith must be exonerated from negligence. I cannot agree.
The basic difference between my views and the views of the majority, as expressed here and in the Stelly case, relates to the duties of a motorist on a public highway. I believe that the motorist has a duty to watch the highway ahead of him, to see objects on it which by the use of ordinary care and prudence he should observe in time to avoid an accident, and to drive at such a speed that he can stop within the range of his vision. This is the established law, as I understand it, and it applies during daylight hours as well as at night.
The majority obviously feels that a night motorist has the right to assume that there will be no obstructions on the highway, and that, relying on that assumption, he may drive at a speed in excess of that which would enable him to stop within the range of vision afforded him by his headlights.
In the instant suit, and in the Stelly case, the majority has gone so far as to hold that a truck being driven along the highway, in the same direction as but slower than the following motorist, constitutes an obstruction on the highway.
Just a few days ago, a majority of this court rendered a judgment which I think is directly contrary to the one being rendered here. See Hathorn v. McKay, La.App., 236 So.2d 74. In the Hathorn case the general rule was applied and the driver of the moving vehicle was held to have been negligent in failing to see a stalled car on the highway in time to avoid an accident. The approaching driver in that case had less reason, I think, to anticipate an obstruction in the highway than did Smith in the instant suit. Yet, the majority held that “he was clearly negligent in his heedless onset without slowing and putting his car under such control as to avoid the hazard ahead reasonably to be anticipated.”
In my opinion, the general rule, as stated in Lewis v. Quebedeaux, supra, is applicable here, and the judgment rendered by the trial court thus is correct.
For these reasons, I respectfully dissent.
On Application for Rehearing.
En Banc. Rehearing denied.
HOOD, J., is of the opinion that a rehearing should be granted for the reasons assigned in his dissenting opinion.