LANDRY, Judge.
Allstate Insurance Company and its insured, Warren Daigle (Appellants), appeal the jury award of $14,000.00 in favor of Betty Rhodes Skains, Natural Tutrix of her minor child, Buddy Joseph Bates (Ap-pellee), for personal injuries sustained by *232 the child in an intersectional collision between the bicycle he was riding and an automobile being driven by Daigle. Appellants concede Daigle’s negligence, but allege error on the part of the jury in failing to find the minor guilty of negligence proximately causing the accident; failing to find Mrs. Skains guilty of independent negligence barring her right to recover special damages; awarding the minor excessive damages for personal injuries, and granting excessive fees to certain expert witnesses. Appellee has answered the appeal seeking an increase in the allowance for personal injuries to $20,000.00. We amend the award of certain expert witness fees and otherwise affirm.
The facts concerning the accident are virtually without dispute. At approximately 10:40 A.M., September 6, 1970, a clear, dry day, young Bates, then seven years and ten months old, was riding his bicycle easterly on Pear Street, Houma, Louisiana, approaching the intersection of Central Avenue. Simultaneously, Daigle was proceeding southerly on Central Avenue in his 1967 Oldsmobile. Both streets are paved. The area in question is residential. A IS mile per hour speed limit was in effect on Central Avenue due to the presence of a playground in the area. Appropriate playground signs were posted along Central Avenue to the knowledge of Daigle who was familiar with the area. Central Avenue was the superior street. A stop sign was in place on Pear Street a few feet west of the west limit of Central Avenue. There was some shrubbery and bushes on property adjoining the intersection, the presence of which impeded view to a minor extent.
Investigation of the accident by municipal police officers discloses approximately 75 feet of skid marks laid down by the Daigle vehicle commencing approximately 12 feet north of the intersection. The impact occurred in the approximate center of the southwest quadrant of the intersection.
Defendant Daigle testified in essence that he was proceeding southerly on Central Avenue at a speed approximately 20 to 25 miles per hour. When his vehicle reached a point about 10 to 12 feet from the intersection, he observed the child about 6 feet from the curb of Central Avenue coming out of Pear Street pedaling along on his bicycle with his head down. Daigle immediately applied his brakes in an attempt to stop. Daigle stated that he believed the child saw his car immediately before the impact and attempted to pedal faster to get out of the way.
Buddy Bates testified he left home that morning to go to the nearby playground accompanied by his 12 year old brother. He later left the playground and was en route home when the accident occurred. He had informed his mother of his intention to go to the playground. He was riding on the sidewalk on Pear Street and remembered slowing down at the intersection, but was not certain that he stopped. When he was a short distance to the west of the stop sign on Pear Street, he looked both ways along Central Avenue and saw no car in sight. He acknowledged there were some bushes on his left which interfered with his view to the north, but that he could see about half way the block. He did not recall seeing the Daigle car before the accident. The child stated that he had been taught by his mother, and at school as well, to cross streets at intersections rather than in the middle of a block and to look both ways before crossing.
On the question of the child’s alleged negligence, Appellants concede the rule in effect is that a child is not judged by the same standards of care as pertain to adults. Appellants maintain the jury erroneously found that, as a matter of law, a child 7 years and 10 months of age was incapable of contributory negligence. Alternatively, Appellants urge that the jury incorrectly found that while the child was capable of contributory negligence, he was nevertheless free of negligence under the circumstances.
As noted by Appellants, there appears some uncertainty in our jurisprudence con *233 cerning the issue of whether, as a matter of law, a child of seven years is incapable of contributory negligence. Borman v. Lafargue, La.App., 183 So. 548, expressly held that a 7 year old was incapable of contributory negligence. Bodin v. Texas Company, La.App., 186 So. 390, contained dicta to that same effect in view of the court’s recitation that defendant’s plea of contributory negligence leveled at an action for injuries to a 7 year old was abandoned upon defendant’s conceding a child of such age was incapable of contributory negligence as a matter of law.
We note that numerous other cases, all dealing with children 7 years of age or older, have evolved the rule that a child of tender years is incapable of contributory negligence in the absence of a showing of extraordinary circumstances. Jackson v. Jones, 224 La. 403, 69 So.2d 729, which involved a child 7 years of age.
The more recent cases have clearly enunciated the rule that the test to be applied in the determination of contributory negligence on the part of small children is a gross disregard for one’s safety in the face of known, perceived and understood dangers. Danna v. London Guarantee & Accident Company, La.App., 147 So.2d 739; Cormier v. Sinegal, 180 So.2d 567; Ates v. State Farm Automobile Insurance Company, 191 So.2d 332.
In applying the foregoing test to small children, age is only one of the operative factors. In addition, the court must consider the child’s mentality, intelligence and ability to recognize, understand and appreciate the danger to which he exposes himself. Plauche v. Consolidated Companies, Inc., 235 La. 692, 105 So.2d 269; Woods v. Cappo, et al., La.App., 232 So.2d 578; Arata v. Orleans Capitol Stores, 219 La. 1045, 55 So.2d 239.
In the case at hand, we find the record falls far short of indicating that young Bates proceeded under circumstances indicative of gross disregard for his own safety in the face of a known, perceived and understood danger. While the record establishes his knowledge and understanding of the danger of crossing a street on his bicycle, it is clear from the record that he was unaware of the approach of the Daigle vehicle. Conceding arguendo, his failure to stop, he was not necessarily negligent under the circumstances. While still in a position of safety, he looked but did not see the oncoming vehicle. Moreover, had he seen the car, he would have been justified in assuming Dai-gle was proceeding at a lawful rate of speed.
We find the present case substantially analogous to that of Danna v. London Guarantee & Accident Company, above, wherein a child 8 years and 4 months old was struck while riding a bicycle. The court in Danna found that the child was unaware of the approach of the vehicle when he rode into the street, and concluded his actions, under the circumstances, indicated the normal impulsive actions of an 8 year old boy rather than a disregard of his own safety despite a known, understood and perceived peril. We hold the same reasoning is applicable in this instance, and that Buddy Bates was not guilty of contributory negligence under the facts of this case.
Obviously the question of a parent’s alleged independent negligence in instances of this nature must be determined in the light of the circumstances of each case. It appears that Mrs. Skains had sufficiently cautioned and warned her child of the dangers attendant upon his riding his bicycle on the public streets. The child in question. had been riding a bicycle with trainer wheels for two or three years preceding the accident. The bicycle he was riding at the time of his injury was new in that it was given him the day before the mishap. As above noted, Mrs. Skains did not recall whether she was aware the child was en route to the playground on his bicycle. As further noted, the child testified he told his mother he was going to the *234 playground and left in the company of his 12 year old brother. If the child left without his mother’s knowledge or permission, we fail to see wherein Mrs. Skains was negligent. Her testimony is to the effect she believed the child was playing with other children, and she did not recall his asking permission to go to the playground. We do not think it is negligence per se for a mother to fail to keep a 7 year old child within the range of her vision at all times. Nothing in the record indicates the child was prone to wander alone, without permission, or that he actually did so in this instance. On the other hand, if the child secured his mother’s permission to go in the company of his older brother, the granting of such leave would not amount to negligence on Mrs. Skains’ part. The area was residential, and the child was accompanied by an older and more mature sibling. There is nothing in the record to indicate that the route to the playground involved crossing or riding upon an expressway or any other thoroughfare upon which congested or fast moving traffic would be encountered. We find Mrs. Skains free of negligence as did the jury.
The Bates child sustained numerous and serious injuries consisting of brain concussion, lacerations and abrasions of the face, head and body and fractures of the left femur, tibia and fibula. He was admitted to the hospital for emergency treatment by Dr. Roland Authement who enlisted the aid of a surgeon, Dr. Gerald Haydel. After setting the child’s broken bones, steel pins were inserted through the tibia, and the affected leg placed in traction. The lad remained in the intensive care unit one or two days during which he was fed intravenously. A catheter was inserted in the bladder. After a week in traction, one of the pins through the tibia had to be replaced and reinserted through the heel bone. The child remained hospitalized in traction for one month. Following traction, the boy was placed in a body cast extending from the chest to the toes on the left leg and down to the knee on the right leg, and in this condition, discharged from the hospital. He remained in this body cast approximately two months during which time it was necessary that he be carried about. The testimony of Dr. Haydel is to the effect the child suffered considerably, necessitating the administration of pain relievers. Dr. Haydel discharged the patient on August 27, 1971, almost one year following the injury. Dr. Haydel noted that the child would probably have a future problem with the length of the injured member which could be expected to grow longer than the uninjured leg as was normal and customary in the case of children. Dr. Haydel could not, however, predict whether the patient would suffer permanent disability as a result of the injury.
The child was seen by Dr. Stuart Phillips Orthopedic Surgeon on February 4, 1971, and September 9, 1971. On initial examination, Dr. Phillips found an obvious deformity of the left leg due to the fractures, in spite of which the child walked without a limp. He noted a 20 degree flexion contracture and a 10 degree loss of flexion of the left hip. He also noted a 10 degree loss of plantar flexion of the left ankle and a 20 degree loss of knee flexion. His second examination revealed basically the same condition with the exception that the left leg had since grown about % inch longer than the right, which was to be expected. In Dr. Phillips’ opinion, the child sustained a permanent IS to 20 degree disability of the left leg. He was of the view that upon reaching approximately 14 years of age, the boy would require a inch heel lift on the right shoe to compensate for the difference in leg length. Dr. Phillips was also of the opinion that in later years the child could expect leg and back pain at the end of a strenuous days work.
It is settled law that in the award of damages for personal injuries, pain and suffering, much discretion is left to the trier of fact, and that awards of such nature are not to be disturbed on appeal except on the express finding of an abuse of discretion. Gaspard v. LeMaire, 245 La. *235 239, 158 So.2d 149; Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127.
Appellants have cited numerous cases, mostly decided within the 1930s and 1940s, in which awards for similar injuries were considerably less than $14,000.00. It suffices to say that because of the intervening decreased purchasing price of the dollar, cases of such vintage are of little value in determining the reasonableness of present day awards. It also suffices that we find the award neither excessive nor inadequate from the standpoint of abuse of discretion vested in the trier of fact.
Expert witnesses who render opinion testimony are entitled to compensation for time spent in research or investigation preparatory to giving such testimony. LSA-R.S. 13:3666, subd. A. In addition, an expert is entitled to compensation for the reasonable value of his time spent in court. Daigle v. Guinchard, La.App., 208 So.2d 11. An expert is not, however, entitled to professional fees for giving testimony which is not opinion in nature, but rather is only testimony such as could be provided by any knowledgeable layman. Landry v. Stadium, La.App., 256 So.2d 343. Landry, above, involved expert witnesses’ fees allowed a surveyor whose testimony related solely to the accuracy of a plat of the intersection at which the accident occurred. This court in Landry, above, denied a surveyor’s right to expert witness fees under such circumstances because he gave no opinion testimony. In this instance, Bernard Davis, Civil Engineer, was awarded expert witness fees of $250.00 for preparing a plat of subject intersection and avouching for its accuracy. The allowance of such expert witness fees was erroneous.
Dr. Phillips was awarded $350.00 for testifying as an expert witness. His deposition commenced at 1:30 P.M. and concluded at 3:00 P.M. He traveled to Houma, Louisiana from New Orleans, and returned that same afternoon. Based primarily on Addison v. Traders and General Insurance Company, 212 So.2d 754, which awarded an orthopedic surgeon $350.00 for absence from his practice for almost an entire day and spending nearly a full day in testifying, Appellants argue that Dr. Phillips should be awarded only $175.00. We do not find the award merits reduction. Dr. Phillips was obviously absent from his office for the better part of a day. Considering the circumstances, we affirm this award.
We find merit in Appellants’ contention that expert witness fees awarded Drs. Haydel and Authement in the sums of $150.00 and $100.00, respectively, should be reduced to $75.00 and $50.00, respectively. Dr. Haydel, who resides in Houma, Louisiana, testified for approximately 25 minutes, his testimony covering 21 pages in the transcript. Additionally, while he gave expert testimony, his evidence was primarily that of a treating physician. Under the circumstances, a fee of $75.00 for Dr. Haydel will adequately compensate him for his time and service. See Malbrough v. Davidson, 219 So.2d 313.
Dr. Authement, who also resides in Houma, accepted by the court as an expert general practitioner, testified for approximately 15 minutes, primarily concerning his treatment of young Bates. The relevant factors considered, we deem a fee of $50.00 will constitute ample remuneration for Dr. Authement’s time and service.
It is ordered, adjudged and decreed that the judgment of the trial court be and the same is hereby reversed insofar as it awarded Bernard Davis, Surveyor, expert witness fees of $250.00, and amended to reduce the expert witness fees awarded Drs. Haydel and Authement from $150.00 and $100.00 to $75.00 and $50.00, respectively, and in all other respects, the judgment is affirmed; all costs of this appeal to be paid by Appellants, Warren Daigle and Allstate Insurance Company.
Amended and affirmed.