241 So.2d 257 (1970)
Fredric Wayne KODER and Jean Payne Koder
v.
PHOENIX INSURANCE CO.
No. 8117.
Court of Appeal of Louisiana, First Circuit.
November 16, 1970.
France W. Watts, Jr., of Watts & Watts, Franklinton, for appellants.
Thomas W. Tanner, Slidell, for appellee.
Before LANDRY, ELLIS and BLANCHE, JJ.
BLANCHE, Judge.
This is a suspensive appeal taken by defendant, Phoenix Insurance Company, from a judgment rendered in favor of plaintiff, Fredric Wayne Koder, as head and master of the community of acquets and gains existing between him and his wife, Jean Payne Koder, in the principal sum of $1,437.46, and in favor of plaintiff, Jean Payne Koder, in the principal sum of $10,000. Suit was filed by plaintiffs against defendant as the liability insurer of the City of Slidell, Louisiana, for damages *258 resulting from injuries allegedly sustained by Mrs. Koder when she slipped and fell on the floor at the Slidell City Auditorium on January 5, 1966. Plaintiff alleged negligence on the part of the City of Slidell, its employees, agents and representatives in maintaining, operating and using its auditorium so as to create and maintain a hazardous condition of the floor surface, which it knew was to be used for a square dance, in improperly applying and using a floor conditioner creating a slick spot, in failing to oversee property within its control and in failing to maintain it in a safe condition, and in failing to supervise and oversee properly the maintenance of the auditorium for the particular use of the square dance. Defendant answered the suit denying any negligence, averring instead that the accident was caused solely by the negligence of Jean Payne Koder, and pleading in the alternative contributory negligence and assumption of risk.
The trial court handed down Written Reasons for Judgment, the pertinent factual findings with respect to liability being the following:
"Mrs. Koder testified at the trial that she and her husband were a group known as `Tammany Twirlers Club' and that they were square dancing on the evening in question. She stated that she was wearing just regular shoes which she had used for this purpose before without any difficulty. She testified that the floor was not slippery in general but that she just hit a slick spot approximately a foot and a half in diameter which caused her to fall.
"Mr. Koder testified that he was dancing with his wife in the same square and was actually reaching for her during the dancing maneuver which they were executing at the time of the accident. He testified that he saw a slick spot some eighteen to twenty inches in diameter in which there was a round circle of wax.
"Mr. John Swenson who is the city clerk of the city of Slidell and is in charge of the city hall and auditorium was called as a witness by the plaintiff. He testified that this dancing group had used the auditorium before and that Levi Scott, the janitor, who was under Mr. Swenson's supervision took care of the floors.
"Mr. Swenson testified that he makes no periodic inspection of the floors and that he has no direct supervision of Levi Scott and that Scott actually works on his own. Mr. Swenson further testified that they used a safety wax but he `had no idea' if a buffer was used on the floor.
"Levi Scott, the janitor, was called as a witness by the plaintiff and stated that his procedure is to use a dust mop then a wet mop, then apply the wax. He testified that he pours the wax out of the can onto the floor and then mops it out. He testified that he does not buff it and that further that he does not ever remove the old wax before applying the new wax. He stated that he had never used a `scrubber' on the floor.
"Also testifying was a Mrs. Wright who testified that the entire floor was not slippery but that the particular spot was `real slick'. It was stipulated that her husband, Mr. James Wright, would have testified to the same effect had he been called to testify." (Written Reasons for Judgment, Record, pp. 26, 27)
The trial court concluded from the evidence that the defendant's insureds were negligent in not maintaining more active supervision over the employee Scott in his manner of handling the floor, and further concluded that Mrs. Koder was not guilty of contributory negligence or assumption of risk:
"A review of the evidence leads me to the conclusion that the defendants [sic] were negligent in not maintaining more *259 active supervision over the employee Scott in his manner of handling the floor. His testimony concerning the method that he uses to wax the floor is one which can easily lead one to the conclusion that there would be a build-up of wax in a small area which would be much more slippery than the remaining area of the floor.
"I am not able to find any evidence of contributory negligence on the part of Mrs. Koder, unless one were to take the position that square dancing in and of itself made one assume the risk or become contributory [sic] negligent. This is a result which I am unable to reach and accordingly I will find in favor of the plaintiff [sic]." (Written Reasons for Judgment, Record, pp. 27, 28)
We are satisfied from our review of the record that Levi Scott, the employee of defendant's named insured, the City of Slidell, was responsible for the latent defect existing on the floor of the auditorium consisting of a concentration of wax, which was the sole, proximate cause of the accident and resulting injuries. The trial court was certainly justified in accepting the testimony offered by plaintiffs to the effect that Mrs. Koder slipped on a concentration of wax or wax-like substance by virtue of the uncontroverted testimony to that effect. We are also satisfied that under the circumstances of this particular case plaintiffs have successfully borne the burden of proving the existence of an extraneous substance upon the floor, the presence of which was properly attributable to the City's employee.
Mrs. Koder enjoyed the status of an invitee to whom the City of Slidell owed the duty of reasonable and ordinary care, which duty included the prior discovery of reasonably discoverable conditions of the premises which may be unreasonably dangerous and correction thereof or a warning to the invitee of the danger, Foggin v. General Guaranty Insurance Company, 250 La. 347, 195 So.2d 636 (1967).
Of particular significance in this regard is the testimony of Levi Scott pertaining to how he would wax the floor of the auditorium:
"Q Now, how did you apply the wax? Tell me just how you applied this wax?
"A Well, I pour it, I usually put it in a mop bucket, you know, and if I don't, I pour it on the floor because there's a lot of waste if I leave it in the mop bucket.
"Q Pour it out in a puddle?

"A In spots and, yes, sir, as far as I think the last time.
"Q And then you mop that out?
"A Yes, sir.
"Q After you applied the wax and you let it dry?
"A Yes, sir.
"Q Then do you do anything else to it?
"A No, sir.
"Q You don't buff it or anything?
"A No, sir." (Record, pp. 67, 68Emphasis added)
We are satisfied that the concentration of extraneous matter on which Mrs. Koder slipped was one of these puddles of wax which Levi Scott failed to "mop out." The existence of this latent, dangerous condition attributable to the employee of the City of Slidell constitutes a breach of the duty owed to Mrs. Koder, thereby rendering defendant-insurer liable to plaintiffs.
We are further satisfied that the trial court committed no manifest error in concluding that the defendant failed to carry the burden of proving either affirmative defense of contributory negligence or assumption of risk under the facts of this *260 particular case. The record is devoid of any evidence suggesting contributory negligence on the part of Mrs. Koder, nor did her mere participation in this square dance constitute an assumption by her of the risk she encountered.
Defendant's final specification of error involves the trial court's award of $10,000 general damages to Mrs. Koder.[1]
In fixing the award for general damages the trial court gave the following résumé of the medical evidence and reasons for assessment of damages:
"The written report of Dr. Irving Redler, orthopaedist, was filed in the record and the deposition of the family physician, Dr. Henry T. Cook of Slidell was also placed in the record.
"Following the fall on January 5, Mrs. Koder consulted Dr. Cook on January 7, at which time he hospitalized her in the Slidell hospital where she remained until January 15, 1966. Dr. Cook testified in his deposition that he did not see Mrs. Koder after January 20, 1966 for these problems, as he had referred her to Dr. Redler for the treatment of her back.
"Dr. Cook's treatment consisted primarilly [sic] of traction and the administering of muscle relaxants.
"Dr. Redler in his report of March 12, 1968, which was filed in the record, recites as to the positive findings which he found on his initial examination in January of 1966. He found evidence of a ruptured intervertebral disc, between the fourth and fifth lumbar vertebrae with compression of the lower lumbar nerves at that level, but stated that since he found evidence of improvement he treated her conservatively.
"He found her improved in the latter part of January 1966 and during February of 1966.
"However, on June 24, 1966 he saw her again, found her to be suffering severely and he hospitalized her in Touro Infirmary where a lumbar myelogram was performed on June 26 followed by surgery on June 28, 1966, where he removed the herniated disc fragments.
"Mrs. Koder was treated by Dr. Redler until December 12, 1966, at which time he discharged her.
"Mrs. Koder impressed me as a sincere person and testified as to serious impairment in her normal physical functions and to considerable pain and discomfort.
"At the time of the trial she testified that she was still experiencing pain on occasion when she would have to discontinue her normal routine and take measures to relieve her pain.
"In view of the testimony of the physician, and that of the plaintiff herself and her husband, I am convinced that she suffered a fairly serious back injury, and that although discharged by the physician, she is still experiencing pain and discomfort.
"Accordingly, I find an award of $10,000.00 for her personal injuries plus the specials as covered above, to be in order in this case." (Written Reasons for Judgment, Record, pp. 28, 29)
Defendant argues that this award of general damages is excessive and should be reduced to $3,000. Plaintiffs contend, on the contrary, that the award is within the permissible range of discretion vested in the trial court and is not excessive, citing by comparison the award for general damages allowed in Addison v. Traders and General Insurance Company, 212 So.2d 754 (La.App.3rd Cir. 1968).
We are satisfied from our review of the record that the trial court did not *261 abuse its discretion[2] in awarding damages for the plaintiff's injuries and extensive medical treatment which she underwent, nor do we feel the trial court manifestly erred in accepting Mrs. Koder's testimony pertaining to her assertions of pain and suffering, the trial court having expressly commented favorably upon Mrs. Koder's credibility.
The judgment appealed from is affirmed with all costs assessed to defendant-appellant.
Judgment affirmed.
NOTES
[1] Defendant does not complain of the amount of the award to Mr. Koder in the sum of $1,437.46 as special damages.
[2] See LSA-C.C. art. 1934(3); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967); Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963).