SAMUEL, Judge.
Plaintiff filed this suit as natural tutrix of her minor daughter, Brenda, to recover damages for personal injuries allegedly sustained by the child in an automobile collision. Suit originally was filed against a number of defendants. However, the only one remaining at the time of trial was Phoenix Assurance Company of New York, liability insurer of the defendant car. After trial there was judgment in favor of plaintiff and against Phoenix in the sum of $12,600. Phoenix has appealed.
In this court, as was the case in the trial court, Phoenix concedes liability. It contends only that the award is excessive, pri *274 marily on the ground plaintiff failed to prove by the required preponderance of evidence that the principal injury complained of, a ptosis[1], was caused by the accident in suit.
The accident occurred on November 1, 1965. Brenda, then eight years of age, was a passenger in the rear seat of an automobile driven by her mother. The collision threw her to the floor of the car, resulting in facial injuries principally in the area of the left upper eyelid and eyebrow. She was taken to Charity Hospital by ambulance where she was treated- for contusions of the left eye arid right mastoid. There was swelling and bleeding in the area of the eye injury.
On October 23, 1966 plaintiff again went to the hospital with the child because three months prior thereto there was a reoccur-rence of swelling. Drops were administered but the condition did not improve and plaintiff returned to Charity Hospital on several occasions. Thereafter several visits were made to another hospital where Brenda received further treatment. The child was seen in May, 1967 by Dr. Robert Azar, an ophthalmologist, who diagnosed the ptosis of the upper left eyelid.
Defendant’s contention, that the proof offered is insufficient to establish the pto-sis resulted from the accident of November 1, 1965, is based on the fact that following the accident plaintiff sought no further medical help until she returned to Charity Hospital on October 23, 1966, almost a year later. The Charity Hospital note of October 23 reveals plaintiff stated the ptosis and swelling began abruptly three months prior thereto and, at that time, she noticed the left eye droopted. However, the note further reveals plaintiff also stated the left eye always looked “smaller” and the child had complained of periodic pain in the eye since.the accident.
Dr. Azar was the only medical expert to testify. He placed no significance on plaintiff’s delay in noticing the droop. As the droop causes the lid to hang down so there is less of the eye to be seen, laymen frequently, and even usually, describe the condition as the eye being smaller. The doctor saw the child on two occasions, May 22, 1967 and again on January 5, 1970, the morning of the trial. On the first occasion he took the history, reviewed the Charity Hospital report of findings after the accident, and performed a full eye examination encompassing all visual functions. He was of the opinion the blunt trauma sustained in the accident was the probable cause of the ptosis, i. e., that the ptosis in fact resulted from the accident. As the record contains no medical or other evidence to the contrary, this sufficiently establishes causal connection between the accident and the ptosis.
We are satisfied that from the time of the accident Brenda frequently has suffered with tearing, pain and mucous formation in her left eye. In addition to the obvious cosmetic effect, the more the muscle becomes fatigued the more the eyelid droops. When the eye is not fatigued and the lid does not interfere with the line of sight there is no loss of visual acuity and the only problems are the drooping of the lid itself and a slight scar above the eyebrow. However, when the eye muscle becomes sufficiently fatigued the drooping is severe enough to interfere with Brenda’s line of sight. The eye then becomes irritated and the vision blurred. When this occurs Brenda’s visual acuity drops to as low as 20/50 with 25% loss of function. In Dr. Azar’s opinion this condition is permanent and corrective surgery is not recommended at this time. The doctor’s second examination, more than two and one-half years after the first, showed the extent of the ptosis had increased since the earlier examination. He felt the condition would not improve and that any subsequent change probably would be for the worse.
*275 Under all of these circumstances we conclude the trial judge did not abuse the “much discretion” vested in him in awarding the sum of $12,600. See Phillips v. Cohen, La.App., 183 So.2d 473.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. A drooping or falling of the upper eyelid as a result of paralysis of the muscle which lifts it.