BARNETTE, Judge.
This ■ is an appeal by the plaintiffs, Thelma Mull, wife of, and Frank Mull, from a judgment rejecting their demands for damages for personal injuries sustained by Mrs. Mull and special damages and dismissing their suit.
This action arose out of an automobile collision in St. Bernard Parish on Louisiana Highway 39 at or near the intersection of Norton Avenue on March 14, 1965. All the vehicles involved or alleged to have been involved were traveling in the direction of New Orleans on Highway 39. We will identify them in the order in which they were proceeding. The first vehicle was a Jeep driven by Authery Greer which he had borrowed to tow the second car, a Corvair owned by him, and at the time in question occupied by Lee Perry. The third vehicle was a 1952 Buick driven by the plaintiff Mrs. Thelma Mull. The fourth vehicle in the procession was a 1957 Chevrolet driven by Joseph Anthony Burk- *477 hardt, Jr.; a Mrs. Caroline Hemelt was a passenger in that car. Whether or not there was a fifth automobile is an issue of fact. There was an alleged hit and run car described by some of the witnesses as a dark colored, brown or maroon old Chevrolet bearing a license number ending in “B-153”.
The only factual issue in the case is whether the alleged fifth car (hit and run) did in fact strike the fourth car (Burk-hardt) thus setting in motion the sequence of collisions. We will discuss this factual issue more fully later in this opinion.
It is not disputed that the fourth car (Burkhardt) struck the third car (Mull) with great force and that it (the Mull Buick) then traveled approximately 66 feet and struck the Corvair (No. 2) in tow by the Jeep. After impact with the Mull Buick, the Burkhardt Chevrolet veered off to the right some 51 feet coming to rest off the highway on the property of a funeral home.
The plaintiff Mrs. Mull sustained physical injuries and her automobile was severely damaged. She brought suit, in which her husband joined for special damages, against Burkhardt and Grain Dealers Mutual Insurance Company, the liability insurer of the Burkhardt automobile. In the alternative, Mrs. Mull sought recovery against her own insurer, Travelers Indemnity Company, under the uninsured motorist provision of her husband’s policy coverage on the Buick. The reason for this alternative suit was that defendant Burk-hardt denied fault on the basis of his having been struck by a hit and run vehicle. Travelers answered denying liability on the basis that there was no physical contact with Mrs. Mull or the automobile in which she was riding as required by the policy provision and, secondly, that the fact of an alleged hit and run vehicle was not proven. Additionally Travelers raised the technical defense of notice not having been given as required by the policy.
Mrs. Caroline Hemelt brought suit against Burkhardt’s insurer, Grain Dealers, from whom she sought recovery of damages for the injuries she sustained. We have no knowledge of the allegations in that suit, nor do we know its outcome. We make reference to it only to explain the introduction into evidence in this suit on behalf of the defendant Grain Dealers of Mrs. Hemelt’s deposition taken in that suit.
The trial judge in “REASONS FOR JUDGMENT” first found that Travelers was not liable under the uninsured motorist provision of its policy because there was no proof of physical contact of the alleged hit and run vehicle with Mrs. Mull or her automobile. For the reasons which will follow we find it unnecessary to discuss that issue. With respect to the other issues, his reasons for judgment are as follows:
“The testimony clearly indicates that Mrs. Mull was either stopped or was going at a very slow rate of speed when her automobile was rear-ended with great force by the automobile driven by Joseph A. Burkhardt, Jr. The Court is of the opinion that Mrs. Mull cannot be charged with any contributory negligence, therefore the sole question for the Court’s determination is whether or not Mr. Burkhardt was negligent.
“Mrs. Mull has testified that she saw the Burkhardt automoble traveling, as she states, ‘at a very rapid rate of speed,’ prior to its having collided with the rear end of her car. She does not, however, recall having seen any other automobile following that of Mr. Burkhardt.
“Mr. Burkhardt’s testimony is that he was following Mrs. Mull’s automobile when his automobile was struck in the rear by a 1954 Chevrolet automobile; that he immediately lost control of his automobile because he became unconscious; that his automobile struck the automobile of Mrs. Mull and then left the roadway to the right, stopping in, or on, either a grass shoulder of the road or a portion of someone else’s property.
*478 “The deposition of Mrs. Caroline Hemelt, taken on December 28th, 1966, has been introduced in evidence in lieu of the testimony of Mrs. Hemelt. According to the deposition of Mrs. Hemelt she was a passenger in the automobile of Mr. Burkhardt, and it is her testimony that the automobile of Mr. Burkhardt was struck in the rear before his automobile struck that of Mrs. Mull.
“Mr. Authery Greer, obviously a disinterested witness, has testified that he did not know anyone connected with the case and had not talked to anyone about the case. He was driving a jeep and towing a Corvair automobile which belonged to him and had quit running. He.was driving the jeep ahead of the Buick automobile being driven by Mrs. Mull. He either stopped or was about to stop for a red light when the Corvair automobile was struck in the rear by the Buick automobile being driven by Mrs. Mull, after it in turn had been struck in the rear by the automobile being driven by Mr. Burkhardt.
“Mr. Greer has testified that after he got out of his jeep he saw the automobile of Mr. Burkhardt on the grass plot, and that as he approached it he saw a 1954 Chevrolet, about one-half to one full car length behind the Buick Automobile of Mrs. Mull, on the roadway. He then left the scene of the accident to telephone, and on his return the 1954 Chevrolet was not at the scene of the accident.
“Mr. Burkhardt has testified that he was unconscious for a short while following the impact, and that he did not see the automobile that struck him when he regained consciousness.
“It is plaintiff’s contention that had the automobile of Mr. Burkhardt been struck in the rear by a hit-and-run automobile, as contended by Mr. Burkhardt, that Mr. Burkhardt’s automobile would have shown damage both to the front and to the rear. It is contended that the photographs, which were taken supposedly of Mr. Burkhardt’s automobile, showed material damage to the front but no damage to the rear. Presupposing that the pictures, which were taken by the son of Mrs. Mull, are actually pictures of the automobile of Mr. Burkhardt, they clearly show severe damage to his automobile but show little, if any, damage to the rear.
“The report of the State Police clearly indicates that there was no damage to the jeep, there was damage to the rear of the Corvair coupe; that there was damage to the front and rear of the 1952 Buick; and that there was damage to the front and rear of the 1957 Chevrolet, the latter being the automobile driven by Mr. Burk-hardt.
“The testimony of Mrs. Hemelt is to the effect that the automobile driven by Mr. Burkhardt was going less than five miles an hour. She stated that they were ‘practically stopped,’ and that had they not been hit the automobile would have made a normal stop.
“The Court is of the opinion that it is clearly conceivable that the 1954 Chevrolet striking the 1957 Chevrolet driven by Mr. Burkhardt while it was in slight motion caused Mr. Burkhardt to lose control of the car, which would account for its traveling, according to the police report, some 51 feet off the roadway, and similarly, causing Mrs. Mull’s automobile to move some 66 feet along the highway. It is clear from the testimony of Mrs. Mull that she did not see the condition of the 1957 Chevrolet after it struck her automobile, so that she cannot testify to its condition in the rear. The only evidence which would tend to refute the written statement of the state trooper who made the investigation that both the front and rear of the 1957 Chevrolet were damaged are the photographs which Mrs. Mull’s son says he took on the day following the accident at the wrecking yard to which the automobiles had been towed following the accident. In this regard the Court finds that it is significant to note that, according to the accident report the 1952 Buick sedan bore a 1965 Louisiana license plate No. 42 B 821, and the 1957 Chevrolet sedan *479 bore license plate Louisiana 4 B 518. The photographs submitted in evidence of the automobile which is said to be the automobile owned by Mrs. Mull clearly shows the license plate as being on the automobile and is No. 42 B 821, the same as that indicated in the police report. However, on the rear of the automobile which is supposedly that of Mr. Burkhardt no license plate is shown, and no reason has been advanced as to why such a license plate would have been removed from Mr. Burkhardt’s car and not from the automobile of Mrs. Mull. Without this license or any other form of evidence other than that of the son and daughter of Mrs. Mull, who pointed out the automobile as being that of Mr. Burkhardt, the Court is inclined to doubt that the automobile was that of Mr. Burkhardt.
“However, irrespective of this fact, the Court is of the opinion that the positive testimony of Mr. Burkhardt, and of his passenger, is such that, coupled with the testimony of Mr. Greer, it must be assumed that Mr. Burkhardt’s automobile was rear-ended by a hit-and-run driver prior to Mr. Burkhardt’s rear-ending of Mrs. Mull.”
We have great respect for the opinion of the trial judge who presided in this case and are fully cognizant of the great weight which must be given to a trial judge’s findings of fact. It is our opinion, however that he was in error in finding as a fact that the Burkhardt automobile was struck by a hit and run vehicle.
Here we have a victim of an automobile collision who is wholly without fault. There is no suggestion of negligence on the part of Mrs. Mull. Suddenly her automobile was struck from behind by another vehicle with great force. It is not for her to prove why or how. The very fact of the occurrence imposed upon the operator of the offending automobile the burden of explaining away the strong presumption of negligence against him. Mr. Burkhardt has attempted to exculpate himself by casting the fault upon an alleged unknown motorist. This is an affirmative defense and must be proven by the same preponderance of evidence as if he were the plaintiff seeking recovery of damages on his own behalf. He has failed to do so.
There was no probative value in the testimony of Mr. Greer insofar as it relates to the alleged hit and run vehicle. His casual observance of another automobile on the highway at or near the accident scene is of no significance. There was no testimony from this witness or any other of damage or anything else to indicate its involvement. We have given no weight to the testimony of Mr. Greer on this issue.
The testimony of Mrs. Hemelt must be considered in the light of her self interest. We do not know the basis of her suit against Grain Dealers, on whose behalf her deposition was offered in evidence in this case. We do not know if it was based on Burkhardt’s alleged negligence or upon some theory of insurance coverage. We are not convinced from her testimony, when considered in its entirety, that she was herself fully convinced that Burk-hardt’s car was struck from the rear. It is of significance that she testified about her head striking the windshield and that she sustained severe lacerations and other head injuries. The photographs of the Burkhardt Chevrolet filed in evidence, (the authenticity of which we will discuss below) clearly show the broken windshield on her side of the car. This strongly indicates to us that her injury resulted from the impact of the Burkhardt automobile with the. Buick, projecting her forward into the windshield. A blow from the rear would more probably have had the opposite effect.
The trial judge gave considerable weight to the testimony of the investigating officer who testified about the physical damage to the automobiles. He described the damage to Burkhardt’s Chevrolet “heavily” in front and “medium to light” in the rear. His account of the accident was as *480 related to him by Mr. Burkhardt at the accident scene and he had no knowledge of a hit and run vehicle except as stated by Burkhardt.
Burkhardt, who did not testify except on cross examination by the plaintiff, claims to have been rendered unconscious by the blow from the rear and thereafter had no control over his car which accounted for its rear-ending the Buick, causing it to be projected 66 feet into the Corvair and his own car to go off the road a distance of 51 feet. These distances were established by the investigating officer’s measurements.
Apparently the trial judge had serious doubt that the photographs filed in evidence were of Burkhardt’s Chevrolet, accordingly he discounted the photographic negation of damage to the rear of the alleged Burkhardt car. He was strongly influenced by the absence of the license plate from the Burkhardt Chevrolet. We will not indulge in speculation in search of an explanation, nor do we attach any significance to the fact; nor was it incumbent upon Mrs. Mull to explain the absence of the license plate.
We entertain no doubt whatever that the photographs filed in evidence of the Burk-hardt Chevrolet were indeed authentic. It is significant that Burkhardt did not categorically deny the identity of the car. His answer (at the trial five years after the accident) was:
“A. I cannot recognize this as being the vehicle I was driving, however, this is the approximate damage, possibly a little less or a little more.
“Q. It’s similar damage to the vehicle that you were operating after the collision ?
“A. Yes.”
Furthermore the two wrecked automobiles were immediately taken away by the same wrecking yard where photographs were taken two days later by Mrs. Mull’s son. There was positive identification of Mrs. Mull’s Buick. The identification of the Chevrolet was in part by hearsay testimony which we have disregarded, but the extensive front end damage coincides with that testified to by witness which, with all circumstances considered and Burkhardt’s evasive and equivocal response to questions about its identity, leave us in no doubt whatever.
It is highly significant that the photographs show very extensive damage to the rear of the Buick and front of the Chevrolet. Several photographs showing the rear from all angles disclose no evidence of rear-end damage. The rear of the automobile was remarkably free from nicks and scratches for a car of its age.
We concede the possibility that an automobile might be struck from the rear without damage being apparent in a photograph but the preponderance of evidence in this case does not justify that speculation. It should be mentioned at this point that Mrs. Hemelt sustained serious injuries when her head struck the windshield and in her deposition she testified:
* * * “A. Well, as far as I can tell you, when the car hit us, it was a terrible jerk, and I heard the crash when our car hit the one in front, it hit it so hard.
“Q. The car in the back hit you?
“A. Yes. My head was already in the windshield when he hit, when we piled into the car in front, * *
It is incredible that the car in question could have been struck, as indicated by Mrs. Hemelt and with a force of sufficient severity to render its driver unconscious with the resulting chain of events in this case without some evidence of impact to the rear being apparent. The evidence preponderates in favor of the conclusion that Mrs. Hemelt’s injuries were sustained as a result of the impact with the car in front. This is strengthened in some measure by the following dialogue between her and Burkhardt immediately following the accident, as testified in her deposition.
*481 ‡ ij;
“I said, ‘You know what happened?’ He said, ‘Yes, somebody hit us.’ I said, ‘You hit the car in front.’ ”
Mrs. Mull’s testimony is more positive and consistent with the physical facts than that of Mr. Burkhardt. She testified that she was “sitting at a complete stop” waiting for the traffic ahead of her to move when she glanced into the rear view mirror and saw “this green car coming at a terrific rate of speed.” She stated she first saw the car when it was approximately two blocks away. She again looked into her mirror and saw the green car at a distance of “about a half a block”. She further testified “I saw the car three times, and when I looked through my rear view mirror, the last time, this man had his head turned and he was doing something on the seat, talking to somebody which I couldn’t see, because he had the sunvisor down and I didn’t know if it was a lady, man or child.”
All the facts and circumstances considered fail, in our opinion, to establish by a preponderance of evidence that the accident was caused by an unknown hit and run vehicle. Our conclusion is that the defendant Burkhardt has not carried the burden of proof required of him by the circumstances of the case. The liability insurance coverage of Burkhardt’s automobile was stipulated, therefore Burk-hardt and his insurer, Grain Dealers, are liable in solido for the damages sustained by plaintiffs.
Mrs. Mull sustained various injuries as a result of the accident. She was momentarily knocked unconscious by the impact. She regained consciousness at the scene of the accident and was taken to a hospital for emergency treatment. She was treated and released the same day. Three days later, on March 17, 1965, she was admitted to Touro Infirmary for treatment of her injuries which were described as traumatic myositis, musculature and small hiatus hernia. She was discharged March 20, 1965, three days later. She was later re-admitted to Touro on April 28, 1965 for additional treatment.
In a medical report dated June 15, 1965, Dr. Raul Reyes described Mrs. Mull’s injuries. On his initial examination Dr. Reyes found Mrs. Mull to be considerably apprehensive. She was suffering pain in her neck, arms, knees and her left ear was throbbing and ringing. Motion of the neck produced what she called a “crackling” sensation.
On examination plaintiff was found to be suffering from “a cervical and upper thoracic injury to the spine”. Diathermy and massage to the neck with traction as well as medication was prescribed.
The medical report indicates that on the initial visit the lower thoracic and lumbo-sacral areas appeared normal. However, on re-examination on April 24, 1965 plaintiff complained of low back pain. Examination revealed “considerable muscle spasm in the lumbosacral area”. At this point she was readmitted to Touro Infirmary “for traction, physiotherapy and analgesics”. On being discharged, some ten days later, a corset was prescribed for her to wear during the day. She was given Valium to be taken four times daily.
On the May 26, 1965 visit plaintiff complained of numbness of both hands and was still experiencing back pain. On June 9, 1965 she was advised to “start receiving massive therapy to her back”. On July 10, 1965 there was no improvement and she was still suffering from “considerable stiffness”. September 16, 1965 revealed no change in her condition. More medication was prescribed.
Plaintiff was not seen again by a physician. According to her testimony she was told by her treating physician that due to her age her muscle tissue was no longer as elastic as a young person’s and there was just nothing more that could be done for her.
*482 Mrs. Mull was under treatment for approximately six months during which she was given medication for pain. She suffered considerable pain, soreness and stiffness throughout the entire period. In fact at trial she stated she still experienced some pain in her back even though it was five years later.
Considering all of the above complaints we think an award of $4,000.00 in general damages would adequately compensate Mrs. Mull for the pain and suffering, both mental and physical, which she endured as a result of the accident.
Medical bills totalling $977.30 were introduced into evidence and were testified to by Mrs. Mull as having been paid by her. We note from the exhibits that none of the medical bills are included in the record before us. Because they were identified by Mrs. Mull, marked as plaintiff’s exhibits Nine through Fifteen, introduced into evidence and were not contradicted, we have no reason to doubt their validity. Therefore, Mr. Frank Mull, plaintiff’s husband is entitled to recover $977.30 expended by him on behalf of the community.
He is likewise entitled to recover $57.60 for cab fare expended by Mrs. Mull for travel to and from Doctor’s visits because she no longer had the use of her automobile. Burch v. St. Louis Fire & Marine Insurance Company, 235 So.2d 218 (La.App. 4th Cir. 1970); Eubanks v. Wilson, 162 So.2d 842 (La.App. 3rd Cir. 1964.)
Mrs. Mull attempted to establish special damages for loss of wages and for loss of her automobile but failed in the proof required. Her automobile was a 1952 Buick purchased by her in 1962 for $380.00. She testified that the car was totally demolished and that she had reliable estimates made to that effect. No estimates were offered into evidence. These facts do not establish a proper valuation of the automobile so as to provide a basis upon which damages for its loss can be determined. Plaintiffs have failed to carry the burden of proof on this point.
Plaintiff, Mrs. Mull, was a cosmetic saleslady making house to house calls. In attempting to establish loss of earnings her counsel tried to ascertain whether or not she returned to work after the accident and what had been her weekly average income from sales. On cross-examination similar questions were asked. Her response to all questions in reference to loss of earnings was the same — “I don’t remember”. We must hold therefore that she has also failed to prove this claimed item of damage.
For the foregoing reasons the judgment appealed is affirmed insofar as it is against plaintiffs and in favor of the defendant, Traveler’s Indemnity Company, and dismisses the suit as to that defendant. The judgment insofar as it is against plaintiffs and in favor of the defendants, Joseph A. Burkhardt, Jr. and Grain Dealer’s Mutual Insurance Company, is reversed and there is now judgment in favor of the plaintiff, Mrs. Thelma Mull against the defendants, Joseph A. Burk-hardt, Jr. and Grain Dealers Mutual Insurance Company in solido in the sum of $4,000.00 and in favor of the plaintiff, Frank Mull, against Joseph A. Burkhardt, Jr. and Grain Dealers Mutual Insurance Company in solido in the sum of $1,034.90, all with legal interest from date of judicial demand and all costs of court.
Affirmed in part, reversed in part and judgment rendered.