SAMUEL, Judge.
Plaintiff, a deputy sheriff, filed this suit against Mrs. Marguerite Delouise, her husband, and their automobile liability insurer for personal injuries (no special damages are alleged or sought) to his forearm and complications arising therefrom. The injuries were incurred while he was in the process of giving Mrs. Delouise a traffic citation. Defendants answered, denying negligence on the part of Mrs. Delouise, averring the sole cause of the injuries in suit was negligence on the part of plaintiff, and alternatively pleading contributory negligence. Following trial on the merits there was judgment in favor of plaintiff and against the defendants in the sum of $20,000. Defendants have appealed. Tn this court they contend the trial court erred in finding any negligence on their part. They further contend, alternatively, plaintiff was guilty of contributory negligence and, further alternatively, the amount awarded is excessive.
The incident occurred on May 23, 1969 at about 11:20 a. m. on Lake Avenue in the Parish of Jefferson where plaintiff was operating a traffic radar unit for the detection of speeding vehicles. Mrs. De-louise, who was driving a Volkswagen, was clocked at a speed of 33 miles per hour in a 20 mile speed zone. She was stopped by plaintiff and ordered to pull over to the side of the road, which she did. Lake Avenue is a two-way, two-lane roadway and the stopped car partially blocked one lane of traffic. The Volkswagen remained stationary while defendant wrote the ticket and handed the defendant driver the book for her signature. Mrs. Delouise affixed her signature and returned the book to the plaintiff who then tore out the citation. From this point there is conflict in the various versions of the incident.
Regarding the manner in which the accident happened, the record contains the testimony of four eyewitnesses: plaintiff; Mrs. Delouise; Mrs. C. B. Wilson, a pas *880 senger in the defendant car who resided in Memphis, Tennessee at the time of trial and who testified by deposition; and Mrs. John R. Coston, who observed the incident from her car which was stopped behind the defendant vehicle. In addition, two deputy sheriffs other than plaintiff testified to what Mrs. Delouise told them after the incident had occurred.
Plaintiff testified Mrs. Delouise was very upset about receiving the traffic citation. She told him she had just come out of New Orleans and a 35 mile speed zone and was under the impression the 20 mile limit was a school zone regulation not applicable at that time. After tearing off the citation plaintiff handed it to Mrs. De-louise who took it from his hand. At that time her car jumped forward, striking his right forearm. He screamed at her to stop. She did so immediately, after traveling only two or three feet. When plaintiff told her he had been hit she again was belligerent and very upset. He then called for other- deputies who soon arrived at the scene.
Mrs. Delouise testified: After plaintiff had torn the citation out of his book and given it to her, she placed it on the seat and, thinking she was dismissed, started the car. At that time plaintiff, who had been extremely rude during the whole episode, said “I’ll see you in court” and she replied “I’ll see you in court”. As she was leaving plaintiff slammed his right arm on the door of her car near the steering wheel and screamed “You are under arrest you hit me.” She came to an immediate stop.
In her deposition Mrs. Wilson said: She and Mrs. Delouise were friends and they were on their way to lunch. She was seated next to the driver. After plaintiff had stopped the car, he and Mrs. Delouise exchanged words. He had given her the citation and was standing about a foot or more from the side of the car when he “slammed” his hand on the car door and yelled “You are under arrest. You struck me.” The witness was not looking at the plaintiff at all times and she didn’t know whether his hand was on the door before or after the defendant car began to move.
Mrs. Coston testified: She had stopped her car behind the defendant Volkswagen which was pulled slightly to the right and blocked her traffic lane. From that position she had an unobstructive view of the left side of the Volkswagen where plaintiff was standing. Plaintiff and Mrs. Delouise were talking, but Mrs. Coston was unable to hear the conversation because her car windows were up. She saw plaintiff step back and Mrs. Delouise said something else to him. He stepped forward and put his arm on the door frame. Then the car “lurched” forward striking his arm. She was certain the car was not in motion when he put his arm on the door frame.
Each of the two other deputy sheriffs testified that after he arrived on the scene Mrs. Delouise told him her foot had slipped off the clutch.[1]
Thus presented is a question of fact dependent upon the testimony of the witnesses and reversible only for manifest error. The trial judge apparently accepted the version of the incident given by Mrs. Cos-ton. As she was a completely disinterested witness, such acceptance was entirely proper; and as her version supports the trial judge’s conclusion relative to liability, we find no manifest error in that conclusion.
According to Mrs. Coston’s testimony, before plaintiff placed his arm on the door frame he was in the act of stepping toward the defendant automobile from only a short distance, probably a step, away. Even at that time, while stepping forward he was too close to the automobile for the car to move forward without danger of striking him. And Mrs. Coston’s testimony establishes the fact that the Volkswagen was stationary when he placed *881 his arm on the door frame. Whether the car “lurched forward” as the result of an intentional act by Mrs. Delouise or as the result of her foot slipping off the clutch is immaterial. In either case the striking was caused by the negligence of the defendant driver and there was no contributory negligence on the part of plaintiff. Accordingly, we affirm on the issue of liability and address ourselves to appellant’s final contention, that the amount awarded is excessive.
In most instances plaintiff’s injury would have amounted to nothing more than a bruised forearm. In this case the result was much more severe. Evidence relative to the injuries consists of the testimony of Dr. James Arens, an anesthesiologist, the medical report of Dr. Robert D. Bloodwell, the operating surgeon, and the lay testimony of plaintiff and his wife.
Immediately after the accident plaintiff was taken to the emergency room of the Ochsner Foundation Hospital where his right arm was washed and dressed. He was given pain pills for a severe burning sensation in his right arm. He returned to the hospital twice more that day for more pain medicine. The following day his hand was placed in a short arm cast. Thereafter, he received daily whirlpool treatment for one week, but his fingers became swollen and the hand discolored.
Plaintiff’s injury was diagnosed as post-traumatic sympathetic dystrophy following injury to the sympathetic nervous system which had become overactive and caused vasal constriction of the hand. Following severe pain over a period of approximately four weeks, with inadequate relief obtained through the use of drugs, a diagnostic and therapeutic stellate ganglion nerve block was performed for six consecutive days. This consisted of inserting 2% gauge needles between the trachea and collar bone to the cervical vertebrae to block the nerves causing the arm pain. Because the relief after each of these blocks lasted only until the anesthetic wore off several hours later, an operation was recommended.
On June 23, 1969 a thoracic sympathec-tomy was performed by Dr. Bloodwell in which a portion of the plexis (network of nerves) was removed. Plaintiff was released from the hospital June 26, 1969.
During the course of the operation it was necessary to collapse a lung and rein-flate it during the operative procedure. While in the hospital plaintiff had tubes in his nose and his side. He continued to have pain for a period of 2% months following the operation. After that time he was free of pain and swelling in his right hand and forearm and had regained the use of those appendages.
Plaintiff was forty years of age at the time of the accident. As a permanent residual of the surgical procedure he suffers from a ptosis (partial drooping) of the right eyelid which occurs particularly when he is fatigued, constriction of the right pupil, enophthalmus (recession of the right eyeball within the orbit), and a lack of feeling and perspiring under his right arm. Because of the partially drooping eyelid, when plaintiff returned to work 2 % months after the accident he was not reassigned to the radar unit but was placed on traffic investigations. While Dr. Blood-well characterized the residuals as “mild inconveniences”, the trial judge did not agree with that conclusion, and neither do we.
In order to ascertain whether the award of $20,000 is excessive, we have searched the jurisprudence for cases involving somewhat similar injuries. Defendants cite us to the cases of Mull v. Burkhardt La.App., 252 So.2d 475, and Aucoin v. Fidelity General Insurance Company, La. App., 219 So.2d 532. Plaintiff cites us to the cases of Meek v. State Farm Mutual Automobile Insurance Co., La.App., 244 So.2d 661; Koder v. Phoenix Insurance Co., La.App., 241 So.2d 257; Moran v. *882 City of New Orleans, La.App., 218 So.2d 91; Cagle v. Playland Amusement Inc., La.App., 202 So.2d 396, and Wright v. State Farm Mutual Automobile Ins. Co., La.App., 169 So.2d 623, in which awards ranged from $10,000 to $20,000 for serious personal injuries. The only case cited to or found by us involving a residual ptosis is Bickham v. Porterie, La.App., 244 So.2d 273, in which an award of $12,600 was made by this court. The ptosis there was coupled with other eye residual disability.
While we would have awarded a lesser amount had the matter been presented to us initially, considering all of the evidence relative to quantum, we cannot say the award of $20,000 is excessive to the extent that it constitutes an abuse of the “much discretion” given to the trial court by LSA-C.C. Art. 1934(3).
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. The Volkswagen had a standard, i. e., not automatic, transmission.